Charles F. Peterson ISB No. 3346
Courtney M. Peterson ISB No. 8002
PETERSON LAWYERS
913 W. River Street, Suite 420
Boise, Idaho 83702-7081
Telephone (208) 342-4633
FAX (208) 336-2059

Attorney for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| UNITED STATES OF AMERICA, | |
|---|---|
| Plaintiff, | Case No. CR-13-120-S-EJL |
| vs. | **MOTION AND MEMORANDUM TO SUPPRESS POST-ARREST STATEMENTS** |
| FAZLIDDIN KURBANOV, | |
| Defendant. | |

**MOTION TO SUPPRESS**

FAZLIDDIN KURBANOV, through counsel undersigned, moves the Court to suppress any and all statements made by him on May 16, 2013 as well as any evidence derived therefrom. The statements he made were not voluntary, the waiver of his right to counsel was not knowing, voluntary or willfully made, and such statements were taken in violation of his Fifth and Sixth Amendment rights to counsel.

**INTRODUCTION**

Between May 14 and 16, 2013, an Idaho Grand Jury heard evidence of the United State's case against Fazliddin Kurbanov. An indictment was filed on May 16th, accusing Mr. Kurbanov of conspiracy to provide material support to a designated foreign terrorist

organization (Count One), conspiracy to provide material support to terrorists (Count Two) as well as possession of an unregistered firearm (Count Three). In Utah, a Grand Jury heard another case against Mr. Kurbanov on May 15, 2013, resulting in an indictment charging him with distributing information relating to explosives, destructive devices and weapons of mass destruction. The Utah indictment was certainly known to the investigators on May 16, 2013 when they detained and arrested Mr. Kurbanov, but they did not tell him about the Utah case. Nor did they explain in any language how his answers to their questions might be used against him in Idaho and Utah.

On May 16, 2013, FBI Special Agents lured Mr. Kurbanov and his family to the Citizens' Immigration Services building in Boise under the guise of a problem with his status in the country. Agents detained him upon arrival, placed him under arrest, and then transported him to the Boise FBI Office for questioning. They also detained and questioned his family members. Mr. Kurbanov was questioned during the transport, despite the fact that he had not been advised he had a right to remain silent and to counsel. Agents report they asked him two questions – (1) was there anything in his home or vehicles that would represent a threat to the safety of the agents serving a federal search warrant, and (2) did Mr. Kurbanov know of any imminent threat or danger to the United States, Idaho, or any other place.

Mr. Kurbanov was *"Mirandized"* following preliminary questions regarding his former and current telephone numbers and addresses. An Uzbek interpreter was present during the interrogation and the advice of rights form relied upon by the government was provided in Uzbek. It was not until this time that Mr. Kurbanov was advised that the agents believed he had been supporting terrorism. He was told that they had completed a

lengthy investigation and their conclusions lead to him being taken into custody.

Several hours into the interrogation, the agents finally informed Mr. Kurbanov that he had been indicted in Utah the day before. After learning of the charges against him in Utah, Mr. Kurbanov advised he no longer wished to speak with the agents and was transported to the Ada County Jail. The Idaho indictment was returned after the interrogation of Mr. Kurbanov.

In audio recordings of the process, Mr. Kurbanov asks if his lawyer is in the building. Agents advise him that is not the case. There is no lawyer there for Fazliddin Kurbanov. He proceeds to answer questions put to him in English, sometimes answering in Uzbek and other times in broken English. Despite his early inquiry about the existence of a lawyer, none is ever provided him during the interrogation.

ARGUMENT

**1. Mr. Kurbanov's Post-Arrest Statements Were Not Knowing and Voluntarily Made, And Neither Was His Waiver Of His Right To Counsel**

The Due Process Clause of the Fifth Amendment to the United States Constitution guarantees that "[n]o person. . . shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. 18 U.S.C. § 3501(e) explains the term "confession" to mean any confession of guilt of any criminal offense or any self-incriminating statement made or given orally or in writing. While Mr. Kurbanov did not confess to violations of the law when interrogated on May 16, 2013, he did make statements which may be construed as self-incriminating. Those statements should be suppressed because (1) they were involuntarily made, (2) his waiver of the right to counsel was not knowingly made, and (3) his initial inquiry about whether his lawyer was

"in the building" evidences that he did not understand his rights.

A defendant's involuntary confession cannot be admitted at trial because doing so would violate a defendant's constitutionally protected due process rights. *Colorado v. Connelly*, 479 U.S. 157, 163, 107 S. Ct. 515, 93 L. Ed. 2d 473 (1986). To determine whether a defendant's statements were involuntarily and therefore, inadmissible, a court must consider the totality of the circumstances involved – both the characteristics of the accused and the details of the interrogation. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226-27, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). The central question to resolve is "whether the defendant's will was overborne when the defendant confessed." *U.S. v. Miller*, 984 F.2d 1028, 1031 (9th Cir. 1993), *citing Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); *see Watson v. DeTella*, 122 F.3d 450, 453 (7th Cir. 1997) (noting that to be admissible a confession cannot be "the result of physical abuse, psychological intimidation, or deceptive interrogation tactics calculated to overcome the defendant's free will.").

The confession must be a "free and voluntary act . . . in light of the totality of the circumstances." *United States v.Veilleux*, 846 F.Supp. 149, 154, *citing* Bryant v. Vose, 785 F.2d 364, 367-68 (1st Cir. 1986); see *Culombe v. Connecticut*, 367 U.S. 568, 602, 81 S. Ct. 1860, 6 L. Ed. 2d 1037 (1961) (holding that the confession must be "the product of an essentially free and unconstrained choice by its maker"); *United States v.* Restreppo, 994 F.2d 173, 183 ("*[t]*he statement must be a product of the accused's 'free and rational choice"). When a defendant claims that his or her confession was compelled, the government bears the burden of proving, by a preponderance of the evidence, that the defendant voluntarily made the statement. *Lego v. Twomey*, 404 U.S. 477, 489, 92 S. Ct.

619, 30 L. Ed. 2d 618 (1972); *U.S. v. Jackson*, 918 F.2d 236, 241 (1st Cir. 1990).

Mr. Kurbanov's statements to agents on May 16, 2013 were not voluntary , nor were they knowingly made. He was being questioned about his actions in the United States by authorities who knew, but did not disclose, that he had already been charged with a serious felony in Utah and that an indictment charging him in Idaho would be filed that day. He did not understand the justice system and his only experience with the law involved questioning in Uzbekistan by authorities who required that he answer their questions.

Factors that a court must consider when making a determination regarding voluntariness, encompass an assessment of both the conduct of the officials receiving the confession and the capacity of the suspect to resist any pressure exerted by those officials. *Evans v. Dowd*, 932 F.2d 739, 741 (8th Cir. 1991); *see Ferguson v. Boyd*, 566 F.2d 873, 877 (4th Cir. 1977) (noting that "the degree of pressure necessary to crush one's will varies with the individual and the circumstances" of the interrogation). Any one particular factor is not determinative of the issue, but rather the court should consider the "cumulative effect" of the officials' actions on the defendant to determine whether the confession was involuntary. *Evans*, 932 F.2d at 742.

18 U.S.C.A. §3501 requires the trial judge to take the following factors into consideration when determining the voluntariness of a defendant's confession:
(1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment,
(2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession,

(3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him,

(4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel; and

(5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

This list is not exhaustive, however, and courts should also consider the defendant's age, intelligence, and education; the length of the detention and questioning; the use or threat of physical punishment; the accused's physical and mental characteristics; the accused's experience with the criminal justice system; the location of the interrogation; and the type and length of questioning; whether Miranda safeguards were administered. *Lucero v. Kerby*, 133 F.3d 1299, 1311 (10th Cir. 1998), cert. denied, 523 U.S. 1110, 118 S. Ct. 1684, 140 L. Ed. 2d 821 (1998); (citations omitted).

As a means of protecting the Fifth Amendment privilege against self-incrimination, a suspect is constitutionally entitled to receive *Miranda* warnings if he or she is (1) in police custody, and (2) is interrogated by law enforcement. *Miranda v. Arizona*, 384 U.S. 436 (1966). The government bears the burden of establishing, by a preponderance of the evidence, that the defendant was apprized of his or her rights under *Miranda*, and that the defendant knowingly, willingly and voluntarily waived those rights when making the confession. *Connelly*, 479 U.S. at 168; *see U.S. v. Montgomery*, 714 F.2d 201, 203 (1st Cir. 1983) (noting that the government bears the "heavy burden" of establishing waiver).

A waiver inquiry has two distinct dimensions – it must be "voluntary in the sense

that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception," and "made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Berghuis v. Thompkins*, 560 U.S. 370, 382-383, 130 S.Ct. 2250 (2010) (citing *Morgan v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135 (1986)). "The main purpose of *Miranda* is to ensure that an accused is advised of and understands the right to remain silent and the right to counsel."

In 2009, Mr. Kurbanov sought refuge in the United States, moving his family Idaho from his native Uzbekistan. Aside from what he had seen on television, he knew absolutely nothing about, nor did he have any experience with the criminal justice system. This fact was obvious to officers, who, with the aid of an interpreter, questioned him for several hours.

As briefly discussed above, Mr. Kurbanov was asked two questions while the agents transported him from the immigration office and the offices of the FBI. These questions, posed during a time when Mr. Kurbanov was handcuffed in the back seat of an FBI vehicle and clearly not free to leave, should have been accompanied by Miranda warnings. These questions ultimately led to more questions by other agents and to the defendant's inculpatory statements. Mr. Kurbanov was not informed he had a right to remain silent until he had arrived at the FBI office for questioning. The agents' failure to advise Mr. Kurbanov of his *Miranda* rights at this early stage likely led him to believe he would be required to answer all of their questions in the future. Adding to the confusion and misunderstanding, these questions were asked in English, although the agents knew Mr. Kurbanov spoke so little English as to require an interpreter.

Mr. Kurbanov was not afforded an Uzbek interpreter until they arrived at the FBI

office to further the interrogation. Upon introduction, Mr. Kurbanov attempted to inquire about the interpreter's region of origin, informing the agents that because Uzbekistan is a country of many dialects and accents, he wanted to make sure his answers were communicated correctly. His concerns were quickly dismissed by the agents, however, and he was instructed to tell them if he found himself not understanding the questions in the future. Mr. Kurbanov's fear of the interpreter misunderstanding him and relaying the incorrect information to the agents was never addressed.

The written *Miranda* rights form was provided to Mr. Kurbanov in his native Uzbek language, but he was afforded less than three and a half minutes to review the form before he was pressured to sign. Mr. Kurbanov could not understand and fully appreciate the rights he was asked to waive in such a short amount of time. The legal system in Uzbekistan is drastically different than ours, and he had no way of understanding what it meant to waive certain rights or agree to answer the agents' questions without the aid of either an attorney or a proficient interpreter. And he did ask about an attorney. He wondered if his attorney was in the building and when he would meet his lawyer.

From the outset of the interrogation, the Uzbek interpreter had to be reminded by the agents to "interpret" the conversation. The interpretation he provided was neither simultaneous or consecutive, as he allowed both parties to ask and answer questions before interrupting to interpret. These breaks in interpretation increased the potential for not only misinterpretation, but also the omission of what may or may not have been important information to either the agents or Mr. Kurbanov. The interpreter and the agents continuously allowed Mr. Kurbanov to answer questions in broken English, and

failed to ensure his complete understanding by (1) not permitting him to fully inquire as to the interpreter's dialect and accent, and (2) not insisting the services of the interpreter be utilized throughout the entire interrogation to assure full understanding by all parties.

In summary, Mr. Kurbanov should have been advised of his right to counsel immediately upon being detained, but he was not. When the more formal "interrogation" began, he was provided a copy of a translated rights waiver warning form, but his lack of understanding the legal system and the consequences of his answers make his waiver of rights involuntary. His waiver was not the product of a knowing and understanding decision.

**2. Mr. Kurbanov Was Denied His Sixth Amendment Right to Counsel During Interrogation That Occurred After His Indictment In Utah and Therefore All Subsequent Statements Should Be Suppressed.**

The Sixth Amendment right to counsel attaches when a "prosecution is commenced, that is, at or after the initiation of adversary judicial proceedings – whether by way of formal charge, preliminary hearing, indictment, information, or arraignment." *Texas v. Cobb*, 532 U.S. 162, 167-168 (2001) (quotation omitted). The Supreme Court has held that the right to counsel arises with the "first formal charging proceeding," when the government "shifts from investigation to accusation." *Moran v. Burbine*, 475 U.S. 412, 428, 430 (1986).

Once the Sixth Amendment right to counsel attaches, the government is forbidden from "deliberately elicit[ing]" incriminating statements from the defendant. *Massiah v. United States*, 377 U.S. 201, 206 (1964). Law enforcement must take "some action…designed deliberately to elicit incriminating remarks." *Kuhlmann v. Wilson*, 477 U.S. 436, 459 (1986). Discussions after a defendant has been indicted, outside the

presence of counsel, and in absence of any waiver of Sixth Amendment rights constitute a Sixth Amendment violation. *Fellers v. United States*, 540 U.S. 519, 524 (2004).

Government actions that deliberately elicit incriminating statements from an indicted defendant in the absence of counsel are improper under the Sixth Amendment. *Main v. Moulton*, 474 U.S. 159, 176-180 (1985); *Massiah*, 377 U.S. at 206. Any statements so gathered must be excluded from the government's case-in-chief, although they are admissible to impeach conflicting testimony by the defendants, provided the statements were voluntary. *Michigan v. Harvey*, 494 U.S. 344, 349-353 (1990); *United States v. Danielson*, 325 F.3d 1054, 1066-1067 (9th Cir. 2003).

The standard for Sixth Amendment admissibility is "expressly distinguished" from the "Fifth Amendment custodial-interrogation standard." *Fellers,* 540 U.S. at 524. A waiver of the Sixth Amendment right to counsel is valid only when it reflects "an intentional relinquishment or abandonment of a known right or privilege." *Johnson v. Zerberst*, 304 U.S. 458, 456 (1938). The accused must "kno[w] what he is doing" so that "his choice is made with eyes open." *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279 (1942). The key inquiry must be: Was the accused made sufficiently aware of his right to have counsel present during the questioning, and of the possible consequences of a decision to forgo the aid of counsel? *Patterson v. Illinois*, 487 U.S. 285, 293 (1988).

The adversarial proceedings against Mr. Kurbanov began upon return of the Utah indictment, on May 15, 2013. As of that day, Mr. Kurbanov's Sixth Amendment right to the assistance of counsel had attached, as he had been formally charged with a crime. Contact by authorities in Idaho constituted a critical stage in the proceedings, and Fazliddin Kurbanov was entitled to counsel.

While Mr. Kurbanov was informed of the reasons for his detention at the outset of the interrogation, he was not informed of the existence of the Utah indictment. He had no knowledge of the criminal charges filed against him, nor did he have knowledge that he had a right to appointed counsel.

At no point did Mr. Kurbanov waive his Sixth Amendment right counsel. Because the information regarding the Utah indictment was hidden from Mr. Kurbanov, he did not know he had the right to have counsel present during the interrogation, nor was he made aware of the possible consequences of waiving such right. One cannot intentionally relinquish or abandon a right unless that right is known to exist. The agents deliberately failed to inform Mr. Kurbanov of the existence of the Utah indictment until hours into the interrogation, when they were satisfied they had elicited incriminating statements.

The Supreme Court has long since recognized that the "guiding hand of counsel" is essential to advise an accused of his rights in a delicate situation, i.e., interrogation. *Powell v. Alabama*, 287 U.S. 45, 69 (1932). In fact, the Court has held that the interrogation stage of a criminal prosecution was the stage when legal aid and advice were the most critical to an accused. *Messiah v. United States*, 377 U.S. 201, 204 (1964). In *Escobedo v. Illinois*, 378 U.S. 478, 490-491 (1964), the Supreme Court was faced with a situation identical to that with which this Court is presented, i.e., where an accused had requested and been denied an opportunity to consult with his lawyer. In that case, the Court noted that the petitioner had become the accused, "and the purpose of the interrogation was to 'get him' to confess his guilt despite his constitutional right not to do so." *Id.* at 485. There is no doubt that, in the instant case, the Defendant was not a mere

suspect at the time he was apprehended and that he had become the accused before any law enforcement interrogation began.

Accordingly, the Court should suppress any statements made by Fazliddin Kurbanov to interrogators on May 16, 2013. The statements he made were not voluntary, the waiver of his right to counsel was not knowing, voluntary or willfully made, and such statements were taken in violation of his Fifth and Sixth Amendment rights to counsel.

Dated this 14th day of October, 2014.

//s//
Charles F. Peterson
Attorney for Defendant

//s//
Courtney M. Peterson
Attorney for Defendant

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 14th day of October, 2014, I caused a true and correct copy of the foregoing document was served on all parties listed in CM/ECF.

Wendy Olson
Aaron N. Lucoff
Heather Patricco
Lawrence Schneider

//s//
Charles F. Peterson