Charles F. Peterson ISB No. 3346
Courtney M. Peterson ISB No. 8002
PETERSON LAWYERS
913 W. River Street, Suite 420
Boise, Idaho 83702-7081
Telephone (208) 342-4633
FAX (208) 336-2059

Attorneys for Defendant

UNITED STATES DISTRICT COURT

DISTRICT OF IDAHO

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>FAZLIDDIN KURBANOV,<br><br>Defendant. | Case No. CR-13-120-S-EJL<br><br>AMENDED MOTION TO SUPPRESS FISA ACQUIRED EVIDENCE AND DISCLOSE SAME TO DEFENDANT AND MEMORANDUM IN SUPPORT |

FAZLIDDIN KURBANOV, through counsel undersigned, and pursuant to 50 U.S.C. §§ 1806(e) and 1825(f), respectfully moves this court to suppress any evidence obtained or derived from electronic surveillance or physical searches conducted pursuant to the Foreign Intelligence Surveillance Act (FISA) (50 U.S.C. §§ 1801-1811, 1821-1829), intended to be offered into evidence, or otherwise used, or disclosed by the government.  As grounds he states as follows:

On May 21, 2013, the government filed a "Notice of Intent to Use Foreign Intelligence Surveillance Information," stating its intent to "offer into evidence or otherwise use or disclose in any proceedings … information obtained and derived from electronic surveillance and physical searches conducted pursuant to" FISA.   The

government's notice was provided pursuant to 50 U.S.C. §§ 1806(c) and 1825(d), which refer to the notification requirements for the use of FISA acquired information from electronic surveillance and physical searches, respectively. Doc. 14.

50 U.S.C. §§ 1806(e) and 1825(f) provide that "[a]ny person against whom evidence obtained or derived from" FISA acquired electronic surveillance or physical search "to which he is an aggrieved person[1] is to be, or has been, introduced or otherwise used or disclosed in any trial, hearing, or other proceeding in or before any court . . . may move to suppress the evidence obtained or derived from such search on the grounds that the information was unlawfully acquired; or the physical search was not made in conformity with an order of authorization or approval."[2]

In this case, any evidence obtained or derived from FISA surveillance or searches should be suppressed because the FISA applications may fail to establish probable cause

---

[1] An "[a]ggrieved person" is "a person who is the target of an electronic surveillance or any other person whose communications or activities were subject to electronic surveillance." 50 U.S.C. § 1801(k)

[2] 50 U.S.C. §§ 1806(f) and 1825(g) provide that whenever a court is notified of the government's intent to enter into evidence, or otherwise use, information obtained through electronic surveillance or physical searches made pursuant to FISA, or whenever any motion to suppress such evidence is made pursuant to 50 U.S.C. §§ 1806(e), or 1825(f), the "United States district court . . . shall, notwithstanding any other provision of law, if the Attorney General files an affidavit under oath that disclosure or any adversary hearing would harm the national security of the United States, review in camera and ex parte the application, order, and such other materials relating to the physical search as may be necessary to determine whether the physical search of the aggrieved person was lawfully authorized and conducted." 50 U.S.C. §§ 1806(f) and 1825(g) further provide that "[i]n making this determination, the court may disclose to the aggrieved person, under appropriate security procedures and protective orders, portions of the application, order, or other materials relating to the physical search, or may require the Attorney General to provide to the aggrieved person a summary of such materials, only where such disclosure is necessary to make an accurate determination of the legality of the physical search."

that Mr. Kurbanov is an "agent of a foreign power;" the applications may contain intentional or reckless material falsehoods or omissions; minimization procedures may be inadequate and/or the government may have failed to comply with minimization procedures; the government may not have made the required certifications in FISA applications, or those certifications may have been erroneous; and any extensions of FISA applications based on searches performed are fruit of the poisonous tree and should be suppressed.

## I.  INTRODUCTION

This case involves numerous intrusive searches of Mr. Kurbanov's private residence and the residence he occupied with other family members; his computers, email accounts, and personal effects.  According to various reports produced in discovery, the FBI began investigating Mr. Kurbanov after he was observed in contact with another man, who is the subject of a similar case in another city. Among the reasons articulated by FBI for its interest, Mr. Kurbanov had reportedly viewed various videos on the Internet, and made purchases of items that the government contends may be used to make bombs.

Mr. Kurbanov was the subject of "court-authorized electronic surveillance" long before the issuance of any search warrant in this case. The government made physical searches of his apartment, seized "samples" from within, and created "mirrored hard drives" of the content of various computer hard drives. These actions and others took place before the issuance of any disclosed search warrant, the application for which occurred on or about May 15, 2013. The FISA searches resulted in the seizure of potential evidence from the residences occupied by Mr. Kurbanov and other family

members, from electronic records, and perhaps automobiles that were also searched, seized temporarily and searched again.

The searches at issue violate the Fourth Amendment to the United States Constitution, which protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AM. IV. The searches appear to have been conducted pursuant to an authorization under the FISA, which was designed for foreign intelligence gathering but is increasingly used by law enforcement to circumvent the protections of the Fourth Amendment and other vital Constitutional protections.

Any evidence from any FISA searches or derived from the same should be suppressed. To the extent that subsequent warrants were obtained from the court in this case, and based in whole or in part on information derived from the FISA searches and seizures, any evidence resulting from the use of a court issued search warrant should also be suppressed.

Defendant asserts, as far as can be determined without access to the FISA materials, that the protocol for obtaining a FISA order was not followed in this case and, consequently, that the fruits of the FISA search should be suppressed. Second, there are numerous reasons why the defense should be given access to the FISA materials in this case to protect the rights of the accused. Finally, this memorandum explains why this Court should rule that FISA is unconstitutional on its face and as applied in this case.

## II.    FISA OVERVIEW

FISA, enacted in 1978, established the Foreign Intelligence Surveillance Court (FISC), a unique type of secret court in which the government is the only entity permitted to appear.  FISA authorizes issuance of two types of warrants – those allowing electronic surveillance and those allowing physical searches.  Both types of warrants are at issue in this case, as the discovery establishes that electronic and physical searches occurred pursuant to "legally authorized surveillance" but prior to the issuance of a search warrant.

The statutory prerequisites of FISA are the same in most respects for both electronic and physical intrusions.  Any application to the FISC must be made under oath by a federal officer and contain certain information and certifications. 50 U.S.C. §§ 1804 and 1823. The statute also requires a summary statement of the means by which the surveillance will be effected and a statement whether physical entry is required to effect the surveillance. *Id.* § 1804(a)(7) - (9). The Attorney General must personally review the application and determine that it satisfies the criteria and requirements set forth in the statute. *Id. at* § 1804(d).

### A.    Requirements to Obtain a FISA Order and Standard for Suppression of FISA Evidence.

Before the FISA court can approve electronic surveillance or a physical  search, it must make several important findings.  One of the more important aspects of a FISA order is that the government must show facts that "the target of the electronic surveillance is a foreign power or an agent of a foreign power" and that each of the facilities or places at which the electronic surveillance or physical search is directed is

being used, or is about to be used, by the foreign power or an agent thereof.  50 U.S.C. §§ 1804(a)(3); 1824(a)(2).

FISA requires a "certification or certifications by the Assistant to the President for National Security Affairs, an executive branch official or officials designated by the President from among those executive officers employed in the area of national security or defense and appointed by the President with the advice and consent of the Senate, or the Deputy Director of the Federal Bureau of Investigation, if designated by the President as a certifying official," that a significant purpose of the surveillance or search is to obtain foreign intelligence information."  50 U.S.C. §§ 1804(a)(6)(B), 1823(a)(6)(B).

FISA authorizes any "aggrieved person" to move to suppress evidence obtained or derived from electronic surveillance or a physical search on the grounds that the information was unlawfully acquired, or the surveillance or search was not made in conformity with an order of authorization or approval.  *Id.* at §§ 1806(e), 1825(f). FISA defines the phrase "aggrieved person" as "a person who is the target of an electronic surveillance or any other person whose communications or activities were subject to electronic surveillance." *Id.* at § 1801(k). Fazliddin Kurbanov is an aggrieved person.

**B.     This Court's Standard of Review of the FISA Application and Procedure is De Novo.**

This Court should review the FISA applications and orders de novo. *United States v. Hammound*, 381 F.3d 316, 332 (4th Cir. 2004) (noting district court's de novo review and conducting its own de novo review of FISA materials), vacated on other grounds, 543 U.S. 1097 (2005); *United States v. Squillacote*, 221 F.3d 542, 554 (4th Cir. 2000) (same). A reviewing court should conduct essentially the  same review of the

FISA application and materials that the FISC conducted. *In re Grand Jury Proceedings of the Special April 2002 Grand Jury*, 347 F.3d 197, 204-05 (7th Cir. 2003). "No deference [should be] accorded to the FISC's probable cause determinations." *United States v. Rosen*, 447 F.Supp. 2d 538, 545 (E.D. Va. 2006). Absent defense participation "de novo review is particularly important "especially given that the review is ex parte and thus unaided by the adversarial process." *See also United States v. Warsame*, 547 F.Supp. 2d 982, 990 (D. Minn. 2008).

The Court must give an exacting review of the FISA materials because at this stage, the FISA activity has moved out of the realm of "intelligence gathering" and is being used to obtain a criminal conviction. The focus now should be the rights of the defendant against whom the government is acting, and not the interests of intelligence.

### III.   ACCESS TO FISA DISCOVERY IS REQUIRED.

The district court has the discretion to disclose portions of relevant materials, under appropriate protective procedures, if it decides that such disclosure is necessary to make an accurate determination of the legality of the surveillance, or is otherwise required by due process. 50 U.S.C. §§ 1806(f) (electronic surveillance), 1825(g) (physical searches); *United States v. Stewart*, 590 F.3d 93, 128 (2d Cir. 2009). Both principles require that the defense have access to the FISA materials in this case.

Accordingly, Defendant moves the Court to give him access to the relevant materials under the appropriate protective procedures and to permit his lawyers to participate in the process on his behalf.

### A. Disclosure of FISA Materials is Necessary to Accurately Determine the Legality of the FISA Surveillance and Searches.

To assist in determining legality, "the court may disclose to the aggrieved person, under appropriate security procedures and protective orders, portions of the application, order, or other materials relating to the surveillance only where such disclosure is necessary to make an accurate determination of the legality of the surveillance." 50 U.S.C. §§1806(f) (electronic surveillance), § 1825(g) (physical searches). While defense counsel have not been permitted to participate in suppression hearings, some courts have articulated principles supporting such participation. For example, in both *United States v. Belfield*, 692 F.2d 141, 147 (D.C. Cir. 1982), and *United States v. Ott*, 827 F.2d 473, 476 (9th Cir. 1987), the courts identified issues including misrepresentations of fact, vague identifications, or records showing overbroad surveillance that may require disclosure to the defense.

Pursuant to 50 U.S.C. § 1806(f), this court should order the government to provide defense counsel the following materials: All applications, extensions, orders, and related materials underlying the electronic surveillance of the defendant conducted pursuant to FISA, as well as applications for such surveillance of any third-party target which intercepted defendant.

### B. Defense Access to Such Information and Participation is Necessary to Insure Due Process is Afforded.

As enacted in 1978, FISA applied to interceptions the "primary purpose" of which was foreign intelligence. However, as amended in 2001 by the USA PATRIOT Act, the statute now applies to interceptions that have international intelligence gathering as a

"significant purpose." *See United States v. Ning Wen*, 477 F.3d 896, 897 (7th Cir.2007); 50 U.S.C. § 1804(a)(6)(B).

The Foreign Intelligence Surveillance Court of Review ("FISCR") has concluded that the amended statute allows domestic use of intercepted evidence provided that a "significant" international objective is present at the time of the FISA order. *Ning Wen*, 477 F.3d at 897 (citing *Sealed Case*, 310 F.3d 717 (F.I.S.Ct.Rev.2002)). The FISCR has further stated that the "significant purpose" test, "impose[s] a requirement that the government have a measurable foreign intelligence purpose, other than just criminal prosecution of even foreign intelligence crimes" in seeking to obtain a FISA order. *Sealed Case*, 310 F.3d 717, 735 (F.I.S.Ct.Rev.2002).

Defense access to the information and defense input is necessary for an accurate determination of these issues – whether the government proved Mr. Kurbanov was a "foreign power or agent of a foreign power," and whether a "significant purpose" of the FISA application was in fact, foreign intelligence gathering. With respect to both physical searches and electronic surveillance, FISA requires that a court find probable cause to believe that the target of the investigation is a foreign power or agent of a foreign power, and that the location the surveillance or search is directed is being used or is about to be used by the target. 50 U.S.C. §§ 1805(a)(2)(A)-(B), 1824(a)(2)(A)-(B). The FISA application here may be insufficient to establish either.

Section 1801(a)-(b) provides several definitions and categories of "foreign power" and "agent of a foreign power." The only category that arguably applies is the "agent of a foreign power" definition provided in § 1801(b)(1)(C). That definition includes a person who "engages in international terrorism or activities in preparation

therefore." Mr. Kurbanov should have a meaningful opportunity to be heard on this matter. Absent access to the information relied upon, and a role in the determination, he is denied due process of law because he must guess as to how the determination was made and he has no voice in the process.

This Court should not be persuaded by any argument that this was strictly a "terrorism" investigation and thus had a significant foreign intelligence objective.  The mere fact that an investigation is in relation to "terrorism" does not establish a "significant" foreign connection under FISA.

In the search warrant context, courts are instructed to rely on common sense when making probable cause determinations.  *Illinois v. Gates*, 462 U.S. 213, 239 (1983). Common sense should also apply here. The government's reliance on FISA supplies a tool to circumvent the United States Constitution and procedures that otherwise protect the public from overreaching. The government improperly used those tools to build a criminal case, unrelated to foreign intelligence gathering. Accordingly, the fruit of the FISA searches and surveillance should be suppressed. The process afforded the Defendant who must "articulate" his arguments in the absence of the information relied upon by the FISC denies him due process, but the Court may solve this problem by allowing access to the information to his lawyers (both of whom have security clearances) and the opportunity to be involved in an adversary proceeding. "Adversary proceedings do in fact take more time, and they are more cumbersome, but with good reason: The adversary process helps us get at the truth." *United States v. Thompson*, 827 F.2d 1254, 1259 (9th Cir. 1987).

**C.    Defense Involvement Is Necessary to Address Why the
        Information Could Not Be Obtained By Normal
        Investigative Procedures.**

An important check on governmental abuse of FISA is that it may only be

used when the Attorney General certifies, "that such information cannot

reasonably be obtained by normal investigative procedures."   50 U.S.C. §§

1804(a)(6)(C);  1823(a)(6)(C).  A defense perspective is necessary to determine

why normal investigative procedures could not be used in this case and to refute

the government's  explanation for why it relied on FISA.

**D.    Defense Involvement is Necessary to Address Questions
        Related to Minimization of Government Intrusion.**

Under FISA, as under the Title III wiretap statute, the government is required to

demonstrate it has minimized its intrusions.  *See* 50 U.S.C. §§ 1801(h); 1802(a)(1)(C);

1804(a)(4); 1805(a)(3); 1806(a); 1821(4); 1822(a)(1)(A)(iii); 1823(a)(4);1824(a)(3), and

(c)(2)(A); 1825(a); 1861(g); 1881a(e) and (g)(2)(A)(ii) and (i)(2)(C); 1881b(b)(D) and

(c)(1)(C) and (c)(3)(C) and (d)(2); 1881c(b)(4) and (c)(1)(C) and  (c)(3)(C) and (d)(2).

> [The] minimization procedures are designed to protect, as far as
> reasonable, against the acquisition, retention, and dissemination of
> nonpublic information which is not foreign intelligence information. If the
> data is not foreign intelligence information as defined by the statute, the
> procedures are to ensure that the government does not use the information
> to identify the target or third party, unless such identification is necessary
> to properly understand or assess the foreign intelligence information that
> is collected.

*In re Sealed Case*, 310 F.3d at 731 (citing § 1801(h)(2)).

The statute requires three specific types of minimization to protect distinct

interests. 50 U.S.C. § 1801.  First, by minimizing acquisition, Congress envisioned that

surveillance should be discontinued where the target is not a party to the communications. Second, by minimizing retention, Congress intended that information acquired, which is not necessary for obtaining, producing, or disseminating foreign intelligence information, be destroyed where feasible. Third, by minimizing dissemination, Congress intended that even lawfully retained information should only be divulged to those officials with a specific need. *In re Sealed Case*, 310 F.3d at 731. "The FISA minimization procedures were enacted 'generally to parallel the minimization provision in existing [electronic surveillance] law.'" *United States v. Thomson*, 752 F. Supp. 75,80 (W.D.N.Y. 1990) (quoting S. Rep. No. 95-701, at 39(1978), reprinted in 1990 U.S.C.C.A.N. 4008).

Defense input is necessary because there was surveillance of such a "significant amount of non-foreign intelligence information" that it is apparent that the minimization procedures were not followed. *United States v. Belfield*, 692 F.2d 141 (D.C. Cir. 1982).

### E.   Due Process Requires Disclosure of FISA Material

FISA requires disclosure "to the extent that due process requires discovery or disclosure." 18 U.S.C. §§ 1806(g), 1825(h), 1845(g)(2). In the contest between disclosure of state secrets and the defendant's right to a fair trial, the latter wins.

As the Supreme Court has long recognized, "the Government can invoke its evidentiary privileges only at the price of letting the defendant go free . . . it is unconscionable to allow [the Government] to under take prosecution and then invoke its governmental privileges to deprive the accused of anything which might be material to his defense." *United States v. Reynolds*, 345 U.S. 1, 12 (1953). This principal has remained unchanged over time. In a criminal prosecution the defense must have access

to information that is "helpful or material," regardless of whether such information is secret. *United States v. Aref*, 533 F.3d 72, 80 (2d Cir. 2008). Being "helpful or material" does not necessarily rise to the level of the government's obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), because "information can be helpful without being favorable in the *Brady* sense." *Id.* Thus, the government must disclose any and all helpful information to the defense. *Id.*; *see also United States v. Varca*, 896 F.2d 900, 905 (5th Cir. 1990).

It is axiomatic that due process requires an opportunity to be heard in a meaningful way and at a meaningful time. Mr. Kurbanov is denied the opportunity to be heard by a process that keeps his lawyers, who have security clearances, from reviewing the FISA materials and participating on behalf of the Defendant in a hearing to determine whether the law was followed in this case.

## IV.    FISA IS UNCONSTITUTIONAL

Although a number of the challenges raised here have been rejected by other courts both before and after the Patriot Act Amendments to FISA in 2001, the Court should consider the claims in light of the facts of this case, amendments to the Patriot Act, and the lack of Supreme Court authority addressing FISA issues.

### A.    The "Significant Purpose" Standard Violates the Fourth Amendment's Prohibition on Unreasonable Searches and Seizures.

Before FISA was enacted, and for the first 25 years of its existence, the "primary purpose" for surveillance or searches was required to be intelligence gathering. *United States v. Truong Dinh Hung*, 629 F.2d 908, 912-13 (4th Cir. 1980). The non-criminal purpose standard was essential to the cases upholding FISA's constitutionality. In the

Patriot Act of 2001 and a subsequent decision of the FISCR, the primary purpose test was abandoned. The change requires reconsideration of FISA's constitutionality given the use of FISA for normal criminal purposes for governmental intrusions, which implicate the Fourth, Fifth, and Sixth Amendments.

### 1. The "primary purpose" standard was essential to the Constitutionality of FISA.

Prior to the amendments to FISA pursuant to the Patriot Act in 2001, information obtained pursuant to a FISA investigation could be used in a criminal proceeding only if the "primary purpose" of the FISA investigation was foreign intelligence gathering. *United States v. Duggan*, 743 F.2d 59, 77 (2d Cir. 1984).

Critically important, this "primary purpose" standard arose from pre-FISA case law holding that warrantless surveillance by the executive branch was permissible only if the purpose of the surveillance was primarily to gather foreign intelligence information. *See*, *e.g.*, *United States v. Butenko*, 494 F.2d 593, 601 (3d Cir.1974) (noting that the surveillance was conducted "solely for the purpose of gathering foreign intelligence information"); *United States v. Truong Dinh Hung*, 629 F.2d 908, 915 (4th Cir.1980) (finding that the executive branch is excused from the warrant requirement only when "the object of the search or the surveillance is a foreign power," and "the surveillance is conducted 'primarily' for foreign intelligence reasons"); *United States v. Brown*, 484 F.2d 418, 427 (5th Cir. 1973) ("The serious step of recognizing the legality of a warrantees wiretap can be justified only when, as in the case before us, the foreign and sensitive nature of the government surveillance is crystal clear.") (Goldberg, J., concurring). Because each of these cases either predates FISA or addresses searches that

predated FISA, logically speaking, the "primary purpose" restriction arose from Constitutional, rather than statutory interpretation, concerns. Indeed, as the Fourth Circuit made clear:

> [T]he executive can proceed without a warrant only if it is attempting primarily to obtain foreign intelligence from foreign powers or their assistants. We think that the unique role of the executive in foreign affairs and the separation of powers will not permit this court to allow the executive less on the facts of this case, but we also are convinced that the Fourth Amendment will not permit us to grant the executive branch more.

*Truong*, 629 F.2d at 916.

### 2.  FISA's original language required more.

As initially enacted, in 1978, FISA required that "the purpose of the surveillance is to obtain foreign intelligence information."  However, in order to comply with the Constitution, courts interpreted this language as requiring that the "primary purpose" of a FISA investigation to be directed at obtaining foreign intelligence information.  *United States v. Johnson*, 952 F.2d 565, 572 (1st Cir. 1991); *United States v. Pelton*, 835 F.2d 1067, 1074-76 (4th Cir. 1987).  This test "ensured that law enforcement officials availed themselves of FISA's more flexible certification procedures only if they primarily sought to obtain foreign intelligence information."  *United States v. Warsame*, 547 F.Supp. 2d 982, 995 (D. Minn. 2008).  In other words, it was essential to the constitutionality of FISA.

### 3.  The "significant purpose" standard violates the Fourth Amendment on its face and as applied in this case.

This "primary purpose" test – which has its basis in the Constitution - was the FISA procedure until 2001 when the Patriot Act amended FISA to allow electronic surveillance and searches where, "a significant purpose" of the surveillance or search was to obtain foreign intelligence information. 50 U.S.C. §§ 1804(a)(7)(B), 1823(a)(7)(B). As the FISCR has noted, the government advocated for this amendment to FISA, whereby the article "the" was replaced with the article "a" before the word "purpose," "in order to avoid the requirement of meeting the 'primary purpose' test." *In re Sealed Case*, 310 F.3d at 732.

Under the newer "significant purpose" test (as interpreted by the FISCR), the government can obtain a FISA warrant provided that it has some "measurable foreign intelligence purpose, other than just criminal prosecution," in order to obtain a FISA warrant. *Id.* at 735. The test is satisfied, "[s]o long as the government entertains a realistic option of dealing with the agent other than through criminal prosecution." *Id.* at 735. The standard, as other courts have recognized, seemingly allows FISA surveillance where the real purpose is criminal prosecution. *See*, *e.g.*, *Warsame*, 547 F.Supp. 2d at 998. This standard violates the Fourth Amendment.

As the Fourth Circuit stated, the primary purpose test is as far as the Fourth Amendment will permit the Government to go in being permitted to physically search and electronically monitor an individual without a warrant. *Truong*, 629 F.2d at 916. Logically, then, the "significant purpose" test, which permits the government to obtain authority to physically search and electronically monitor an individual without a surveillance and searches where, "a significant purpose" of the surveillance or search was to obtain foreign intelligence information. 50 U.S.C. §§ 1804(a)(7)(B),

1823(a)(7)(B). As the FISCR has noted, the government advocated for this amendment to FISA, whereby the article "the" was replaced with the article "a" before the word "purpose," "in order to avoid the requirement of meeting the 'primary purpose' test." *In re Sealed Case*, 310 F.3d at 732.

The significant purpose test renders FISA unconstitutional as applied in this case because the investigation of Mr. Kurbanov was primarily, if not fully, criminal. Mr. Kurbanov resided exclusively within the United States at all relevant times and there is no apparent foreign intelligence gathering connection. The FISA application in this case, therefore, must have relied on the "significant purpose" test, and would not have been upheld under the former "primary purpose" test. Accordingly, this Court should rule that the FISA "significant purpose" standard as applied in this case is unconstitutional.

**B.    FISA Violates Numerous Other Fourth Amendment Protections.**

**1.    FISA Authorizes "Warrants" Without the Meaningful Judicial Review Required By The Fourth Amendment.**

In order to conduct a search or surveillance in an ordinary criminal investigation, the government must obtain the prior authorization of a neutral, disinterested magistrate who has the authority to determine whether the requirements of Rule 41 or Title III have been satisfied. *See* FED. R. CRIM. P. 41 (governing physical searches in criminal investigations); 18 U.S.C. §§ 2518(1)(b), (2) & (3) (governing electronic surveillance in criminal investigations); *see Johnson v. United States*, 333 U.S. 10, 13-14 (1948) ("The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable

men draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.").

FISA reduces the authority of judges reviewing warrants issued under its provisions. The FISC does not have full authority to determine whether, in any particular investigation, the FBI has satisfied the requirements of FISA. The government satisfies most of FISA's requirements simply by certifying that the requirements are met. *See* 50 U.S.C. § 1804(a)(6); 1823(a)(6) (enumerating necessary certifications). While certain (but not all) of these certifications must be accompanied by "a statement of the basis for the certification," 50 U.S.C. § 1804(a)(6)(E), the statute makes clear that the FISC is to defer to the government's certification unless it is "clearly erroneous on the basis of the statement made under § 1804(a)(6)(E)." 18 U.S.C. § 1805(a)(4). As the FISCR has acknowledged, "this standard of review is not, of course, comparable to a probable cause finding by the judge." *In re Sealed Case*, 310 F.3d at 739 (quoting H. R. REP. NO. 95-1283, at 80 (1978)).

Prior to the Patriot Act Amendment, it may have been reasonable to limit judicial review of warrant applications. Once, however, the use of warrants was permitted even when the "primary purpose" was no longer intelligence gathering, the rationale for limiting the judiciary's role can no longer stand under the Fourth Amendment. The protections of the people's right against government intrusions for criminal investigatory purposes required by the Fourth Amendment must be present if the government is to use evidence in a criminal prosecution. "A search prosecuted in violation of the Constitution is not made lawful by what it brings to light; and the doctrine has never been recognized

by this court, nor can it be tolerated under our constitutional system, that evidences of crime discovered by a federal officer in making a search without lawful warrant may be used against the victim of the unlawful search where a timely challenge has been interposed."  *Byars v. United States*, 273 U.S. 28, 29-30 (1927).

Since surveillance and searches conducted pursuant to FISA here were likely conducted without meaningful prior judicial review, they were unreasonable under the Fourth Amendment.

### 2.  FISA Orders Are Granted Without the Protection of the Fourth Amendment.

FISC surveillance orders are not warrants within the meaning of the Fourth Amendment.  *See In re Sealed Case*, 310 F.3d at 741 (acknowledging that FISA orders "may not be . . .'warrant[s]' contemplated by the Fourth Amendment").  The Supreme Court has held that a warrant must be issued by a neutral, detached magistrate; must be based on a demonstration of probable cause; must relate to a particular offense;  and must particularly describe the things to be seized as well as the place to be searched. *Dalia v. United States*, 441 U.S. 238, 255 (1979). FISC orders do not satisfy  these requirements.

FISA empowers the government to conduct the most intrusive kinds of surveillance with lesser judicial review then required by the Constitution, without showing criminal probable cause, and without meeting particularity requirements. Because FISC orders are not warrants, searches conducted under FISA are presumptively unreasonable.  *See*, *e.g.*, *Payton v New York*, 445 U.S. 573, 586 (1980); *Chimel v. California*, 395 U.S. 752, 762-63 (1969).  The surveillance at issue in this case cannot overcome that presumption.

### 3. FISA Warrants Do Not Satisfy The Particularity Requirement.

The electronic surveillance and searches in this case were substantial. Mr. Kurbanov's home was searched on at least two occasions, his email account was searched, his telephone was searched, and his computer files were copied and searched. The duration and scope of these intrusions was not limited in any meaningful way, and as such the conduct violated the Fourth Amendment's particularity requirement.

The Fourth Amendment ordinarily prohibits the government from conducting intrusive surveillance unless it first obtains a warrant describing with particularity the things to be seized as well as the place to be searched. *Berger v. New York*, 388 U.S. 41, 58 (1967) (noting that Fourth Amendment particularity requirement was intended to prevent the government's reliance on "general warrants" that allow "the seizure of one thing under a warrant describing another"). In *Berger*, the Supreme Court stated that the importance of the particularity requirement "is especially great in the case of eavesdropping." *Id.* at 56. The Court explained: "[B]y its very nature eavesdropping involves an intrusion on privacy that is broad in scope." *Id.* "[T]he indiscriminate use of such devices in law enforcement raises grave constitutional questions under the Fourth and Fifth Amendments, and imposes a heavier responsibility on this Court in its supervision of the fairness of procedures." *Id.*

With respect to eavesdropping devices and wiretaps, the particularity requirement demands not simply that the government describe in detail the communications it intends to intercept, but also that the duration of the intercept be strictly limited. *See Berger*, 388 U.S. at 58-60. Title III, which Congress enacted shortly after *Berger* was decided,

limits the term of surveillance orders to 30 days. 18 U.S.C. § 2518(5). FISA, by contrast, authorizes surveillance terms of up to 90 or 120 days or even one year. 50 U.S.C. § 1805(d)(1); 1824(d)(1). To the extent FISA is read to permit issuance of a warrant - or an extension - without the type of particularity required under Title III, it would violate the Constitution. *But see Mubayyid*, 521 F. Supp. 2d at 138.

### 4. Surveillance was Conducted Without Compliance with the Fourth Amendment's Probable Cause Requirement.

The Fourth Amendment ordinarily prohibits the government from conducting intrusive surveillance without first demonstrating criminal probable cause - probable cause to believe that "the evidence sought will aid in a particular apprehension or conviction for a particular offense." *See Dalia*, 441 U.S. at 255. FISA authorizes the government to conduct intrusive surveillance if it can show what is known as "foreign intelligence probable cause" – probable cause to believe that the surveillance target is a foreign power or agent of a foreign power. *See* 50 U.S.C. § 1805(a)(3)(A). The statute does not require the government to advance any reason whatsoever (let alone probable cause) to believe that its surveillance will yield information about a particular criminal offense. Indeed, foreign-intelligence probable cause bears only a passing resemblance to criminal probable cause.

In response to a Freedom of Information Act request filed by the ACLU and others in August 2002, the FBI released, among other things, a document from the FBI's National Security Law Unit entitled, "What do I have to do to get a FISA?" The document states, in relevant part:

Probable cause in the FISA context is similar to, but not the same as, probable cause in criminal cases. Where a U.S. person is believed to be an agent of a foreign power, there must be probable cause to believe that he is engaged in certain activities, for or on behalf of a foreign power, which activities involve or may involve a violation of U.S. criminal law. The phrase "involve or may involve" indicates that the showing of [nexus to] criminality does not apply to FISA applications in the same way it does to ordinary criminal cases. As a result, there is no showing or finding that a crime has been or is being committed, as in the case of a search or seizure for law enforcement purposes. The activity identified by the government in the FISA context may not yet involve criminality, but if a reasonable person would believe that such activity is likely to lead to illegal activities, that would suffice. In addition, and with respect to the nexus to criminality required by the definitions of "agent of a foreign power," the government need not show probable cause as to each and every element of the crime involved or about to be involved.

"What do I have to do to get a FISA?," at 2 (Document released by FBI in response to August 21 Freedom of Information Act request submitted by ACLU et al.).

Foreign-intelligence probable cause is not "probable cause" within the ordinary meaning of the Fourth Amendment. The surveillance at issue in this case was not premised on criminal probable cause and accordingly was unreasonable within the meaning of the Fourth Amendment.

### C.   The Ex Parte, In Camera FISA Process Violates Due Process, A Defendant's Rights To Be Present At All Critical Stages Of The Criminal Process, And His Right To The Effective Assistance Of Counsel.

FISA authorizes the unprecedented exclusion of the accused from critical stages of the prosecution, including review of the motion to suppress evidence. The post-indictment procedure, in a criminal prosecution, is conducted ex parte and in camera and without the defendant ever having the right to even see the warrants or affidavits he is challenging. To permit Mr. Kurbanov's motion to proceed in this manner violates his Fifth and Sixth Amendment rights. Fundamental to due process is the right to notice and

an opportunity to be heard. *See LaChance v. Erickson*, 522 U.S. 262 (1998). The interest at stake is the most fundamental liberty - freedom from incarceration. *Turner v. Rogers*, 131 S.Ct. 2507, 2518 (2011) ("Freedom 'from bodily restraint' lies 'at the core of the liberty protected by the Due Process Clause.'"). Equally fundamental is a defendant's right to be present at, and participate in, all critical stages of a criminal prosecution and to be meaningfully assisted by counsel. *See Montejo v. Louisiana*, 129 S. Ct. 2079, 2085 (2009); *Tennessee v. Lane*, 541 U.S. 509, 523 (2004).

To be sure, the Constitution recognizes some limits on a defendant's participation in the criminal process. The government may secure an indictment without his participation. *United States v. Salsedo*, 607 F.2d 318, 319 (9th Cir. 1979). In limited circumstances, the court may review potential evidence ex parte to determine whether it is material to the defense. *United States v. Mejia*, 448 F.3d 436, 543-54(D.C. Cir. 2006). If so, it must be disclosed or the government loses the opportunity to use it. *Skinner v. Switzer*, 131 S. Ct. 1289, 1300 (2011) (citing *Brady*, 373 U.S. at 87).

FISA's limitations on a defendant's participation are different in kind, allowing the court to determine complex constitutional questions in a non-adversarial setting and in secret. The Constitution forbids such a process, as analogous holdings show. *See, United States v. Abuhamra*, 389 F.3d 309 (2d Cir. 2004). There, in the context of a bail application, the government submitted, and the District Court considered, evidence ex parte and in camera. The Court rejected one-sided secret proceedings: "Particularly where liberty is at stake, due process demands that the individual and the government each be afforded the opportunity not only to advance their respective positions but to correct or contradict arguments or evidence offered by the other." *Id.* at 322.

The court in *Abuhamra* noted such a procedure violated the defendant's due process rights and also the right of public access to criminal trials. *Id.* at 316 n.3, 323; *see also Alderman*, 394 U.S. at 182-84. FISA's ex parte, in camera process, whatever its legality in the context of foreign surveillance, cannot constitutionally displace the defendant's rights under the Fifth and Sixth Amendments. *See United States v. Coplon*, 185 F.2d 629, 638 (2d Cir. 1950) (finding the refusal to allow the defense to see records the judge reviewed in camera to determine if the "taps" led to evidence introduced at trial violated the defendants' constitutional right). "Few weapons in the arsenal of freedom are more useful than the power to compel a government to disclose the evidence on which it seeks to forfeit the liberty of its citizens." *Coplon*, 185 F.2d at 638.

One of the first cases to consider these arguments under FISA was *Belfield*. There, the court rejected similar Fifth and Sixth Amendment claims. 692 F.2d at 148. The court's reasoning was, however, anchored in the fact that "FISA is concerned with foreign intelligence surveillance." *Id.* Courts that rejected similar claims after the Patriot Act amendments have failed to recognize the change in the statutory criteria. *See, e.g., United States v. Kashmiri*, No.09 CR 830-4, 2010 WL 4705159 (N.D. Ill. 2010). Once Congress expanded the purposes of and standards for surveillance, it shifted the constitutional calculus. As stated in *Boumediene v. Bush*, 553 U.S. 723, 797 (2008), "security subsists, too, in fidelity to freedom's first principles." Those principles support the conclusion that FISA no longer passes constitutional muster if it shuts criminal defendants out of the process.

**D.   The FISA "Suppression" Process Unconstitutionally Interferes With The Article III Judicial Power.**

Chief Justice John Marshall in *Cohens v. Virginia*, noted that the judicial power of the federal courts "extends to all cases arising under the constitution or a law of the United States, whoever may be the parties."  19 U.S. (6 Wheat.) 264, 392 (1821).  FISA may trigger this judicial power, but it cannot constitutionally expand or restrict the scope of Article III.  It does both.

Considering the constitutionality of FISA's limit on judicial power, "[t]he controlling question is whether the function to be exercised by the court is a judicial function."  *Fed. Radio Comm'n v. Nelson Bros., Co.*, 289 U.S. 266, 277 (1933). An Article III court determining a Fourth Amendment suppression motion on a federal indictment surely performs a "judicial function."

The first defect in FISA under Article III is that it permits the courts to act when there is no case or controversy.  *Camreta v. Green*, 131 S. Ct. 2020, 2028 (2011) ("Article III of the Constitution grants this Court authority to adjudicate legal disputes only in  the context of "Cases" and "Controversies.").  The role of the courts is to resolve disputes between or among parties.  *Principal Life Ins. Co. v. Robinson*, 394 F.3d 665, 671 (9th Cir. 2005).  They may not issue advisory opinions.  *Sierra Club v.  Morton*, 405 U.S. 727, 732 n.3 (1972).  Contrary to these principles, FISA permits the courts to act in a one-sided manner, treating the question of suppression as if only one party had an interest sufficient to warrant judicial action.

The second defect in FISA is that it limits the Judiciary's Article III powers by requiring the courts to defer to executive assertions in a criminal case.  50  U.S.C. §§ 1805(a)(4),1824(a)(4).  The fact that FISA gives the Attorney General undue control of the warrant and suppression motion processes and limits FISA review infringes on the

judicial responsibility to say what the law is, as it "is a responsibility of this Court as ultimate interpreter of the Constitution." *Baker v. Carr*, 396 U.S. 186, at 211 (1962). *See Kendall v. United States*, 37 U.S. 524, at 526 (1838) (discerning judicial authority and separation of powers).

The third defect is that FISA, as implemented *ex parte* and in camera, violates the separation of powers inherent in the first three Articles of the Constitution. While the Executive Branch must assure that the laws are faithfully executed, the Judiciary ultimately must decide whether the executive action complies with legislative standards. By conferring deference to the Executive while excluding the citizen, the separation of powers is breached, with the citizen ineffectively protected from executive overreaching.

The judicial power to conduct a Fourth Amendment suppression hearing flows directly from Article III of the Constitution.  It does not flow from, nor can it be limited by, a purported congressional delegation to the Attorney General, who in turn tells this Court how to exercise its judicial powers and discretion in a bona fide constitutional "case and controversy."

## V.    CONCLUSION

The FISA investigation in this case did not meet statutory standards. The purpose of this FISA investigation was to conduct a criminal investigation and there was no connection, much less the "significant" connection required, to foreign intelligence gathering. Furthermore, there was no probable cause to find that Mr. Kurbanov was an "agent of a foreign power" as required by FISA. Disclosure of the FISA evidence is required in this case because defense input is necessary to properly address the complex matters at issue in the motion to suppress, and because disclosure is required under due

process principles.  Finally, FISA is unconstitutional both on its face and as applied in this case because it violates the Fourth, Fifth, and Sixth Amendments, as well as Article III to the United States Constitution.

Dated this 16th day of October, 2014.

//s//_____
Charles F. Peterson
**Attorney for Defendant**

//s//_____
Courtney M. Peterson
**Attorney for Defendant**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 16th day of October, 2014, I caused a true and correct copy of the foregoing document was served on all parties listed in CM/ECF.

Wendy Olson
Aaron N. Lucoff
Heather Patricco
Lawrence Schneider

//s//_____
Charles F. Peterson