WENDY J. OLSON, IDAHO STATE BAR NO. 7634
UNITED STATES ATTORNEY
AARON N. LUCOFF, IDAHO STATE BAR NO. 5707
HEATHER S. PATRICCO, WASHINGTON D.C. BAR NO. 465883
ASSISTANTS UNITED STATES ATTORNEY
LAWRENCE SCHNEIDER, NEW YORK STATE BAR NO. 2594174
UNITED STATE DEPARTMENT OF JUSTICE TRIAL ATTORNEY
ATTORNEYS FOR THE UNITED STATES OF AMERICA
800 EAST PARK BOULEVARD, SUITE 600
BOISE, IDAHO  83712
TELEPHONE:  208-334-1211
FACSIMILE:  208-334-1413

UNITED STATES DISTRICT COURT
DISTRICT OF IDAHO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **FAZLIDDIN KURBANOV**, | ) | Case No. CR 13-00120-S-EJL |
| | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S UNCLASSIFIED MEMORANDUM IN OPPOSITION TO
DEFENDANT'S AMENDED MOTION TO SUPPRESS FISA ACQUIRED EVIDENCE
AND DISCLOSE SAME TO DEFENDANT AND MEMORANDUM IN SUPPORT**

## TABLE OF CONTENTS

I. INTRODUCTION ........................................................................................................2

   A. BACKGROUND ...............................................................................................3

   B. OVERVIEW OF THE FISA AUTHORITIES ...................................................5

      1. **[CLASSIFIED MATERIAL REDACTED]** ........................................5

      2. **[CLASSIFIED MATERIAL REDACTED]** ........................................5

      3. The FISC's Findings ...............................................................................5


II. THE FISA PROCESS ...............................................................................................5

   A. OVERVIEW OF FISA .......................................................................................5

   B. THE FISA APPLICATION ...............................................................................6

      1. The Certification ......................................................................................8

      2. Minimization Procedures .........................................................................9

      3. Attorney General's Approval ................................................................10

   C. THE FISC'S ORDERS ....................................................................................10


III. THE DISTRICT COURT'S REVIEW OF FISC ORDERS ...................................14

   A. THE REVIEW IS TO BE CONDUCTED IN CAMERA AND
      EX PARTE ........................................................................................................15

      1. In Camera, Ex Parte Review is the Rule ...............................................16

      2. In Camera, Ex Parte Review is Constitutional .....................................20

   B. THE DISTRICT COURT'S SUBSTANTIVE REVIEW ...............................22

      1. Standard of Review of Probable Cause .................................................22

      2. Probable Cause Standard ........................................................................23

      3. Standard of Review of Certifications .....................................................26

      4. FISA is Subject to the "Good-Faith" Exception ...................................27


IV. THE FISA INFORMATION WAS LAWFULLY ACQUIRED AND
    THE ELECTRONIC SURVEILLANCE AND PHYSICAL
    SEARCHES WERE MADE IN CONFORMITY WITH AN ORDER
    OF AUTHORIZATION OR APPROVAL...........................................................29

   A. THE INSTANT FISA APPLICATIONS MET FISA'S PROBABLE CAUSE
      STANDARD .....................................................................................................29

      1. **[CLASSIFIED MATERIAL REDACTED]** ....................................29

      2. **[CLASSIFIED MATERIAL REDACTED]** ....................................29

         a. **[CLASSIFIED MATERIAL REDACTED]**............................29

           i. **[CLASSIFIED MATERIAL REDACTED]**.....................29

           ii. **[CLASSIFIED MATERIAL REDACTED]**.....................29

      iii.    **[CLASSIFIED MATERIAL REDACTED]**......................29

      iv.    **[CLASSIFIED MATERIAL REDACTED]**......................29

      v.    **[CLASSIFIED MATERIAL REDACTED]**......................29

    b.  **[CLASSIFIED MATERIAL REDACTED]**..........................29

      i.    **[CLASSIFIED MATERIAL REDACTED]**......................29

      ii.    **[CLASSIFIED MATERIAL REDACTED]**......................30

      iii.    **[CLASSIFIED MATERIAL REDACTED]**......................30

      iv.    **[CLASSIFIED MATERIAL REDACTED]**......................30

**3. [CLASSIFIED MATERIAL REDACTED]** ...............................................30

  **a. [CLASSIFIED MATERIAL REDACTED]** ......................................30

      i.    **[CLASSIFIED MATERIAL REDACTED]**......................30

      ii.    **[CLASSIFIED MATERIAL REDACTED]**......................30

      iii.    **[CLASSIFIED MATERIAL REDACTED]**......................30

      iv.    **[CLASSIFIED MATERIAL REDACTED]**......................30

      v.    **[CLASSIFIED MATERIAL REDACTED]**......................30

      vi.    **[CLASSIFIED MATERIAL REDACTED]**......................30

      vii.    **[CLASSIFIED MATERIAL REDACTED]**......................31

      viii.    **[CLASSIFIED MATERIAL REDACTED]**......................31

        a. **[CLASSIFIED MATERIAL REDACTED]**...............31

        b. **[CLASSIFIED MATERIAL REDACTED]**...............31

        c. **[CLASSIFIED MATERIAL REDACTED]**...............31

        d. **[CLASSIFIED MATERIAL REDACTED]**...............31

        e. **[CLASSIFIED MATERIAL REDACTED]**...............31

      ix.    **[CLASSIFIED MATERIAL REDACTED]**......................31

        a. **[CLASSIFIED MATERIAL REDACTED]**...............31

        b. **[CLASSIFIED MATERIAL REDACTED]**...............31

        c. **[CLASSIFIED MATERIAL REDACTED]**...............32

  **b. [CLASSIFIED MATERIAL REDACTED]** ....................................32

      i.    **[CLASSIFIED MATERIAL REDACTED]**......................32

4.  Conclusion: There Was Sufficient Probable Cause to Establish that the Information Acquired from the Targeted Facilities, Places, Property, or Premises Was Lawfully Acquired .....................................................................32

B. THE CERTIFICATIONS COMPLIED WITH FISA......................................32

  1. Foreign Intelligence Information...........................................................32

  2. "A Significant Purpose" ........................................................................32

  3. Information Not Reasonably Obtainable Through Normal Investigative Techniques.................................................................................................32

C. ELECTRONIC SURVEILLANCE AND PHYSICAL SEARCHES WERE
   CONDUCTED IN CONFORMITY WITH AN ORDER OF
   AUTHORIZATION OR APPROVAL..........................................................................32
   1. The Standard Minimization Procedures ............................................33
   2. **[CLASSIFIED MATERIAL REDACTED]** ...................................37
   3. The FISA Information Was Appropriately Minimized ......................37

V. THE COURT SHOULD REJECT THE DEFENDANT'S LEGAL
   ARGUMENTS ...........................................................................................................37
   A. FISA IS CONSTITUTIONAL .......................................................................38
      1. FISA's Significant Purpose Test Is Constitutional............................38
      2. The Probable Cause Standard of FISA Complies with the
         Fourth Amendment's Reasonableness Requirement.........................42
      3. The Court's In Camera and Ex Parte Review Does Not
         Offend the Defendant's Due Process or Sixth Amendment
         Rights to Counsel..............................................................................44
      4. The Defendant's Remaining Constitutional Challenges
         Are Without Merit..............................................................................46
   B. THE COURT SHOULD NOT DISCLOSE THE FISA
      MATERIALS TO THE DEFENDANT OR DEFENSE
      COUNSEL....................................................................................................48
      1. Disclosure of the FISA Materials Would Harm the
         National Security of the United States ..............................................49
      2. Possession of a Security Clearance is Irrelevant to
         Determining Whether Disclosure of FISA Materials is Warranted ................49
      3. Franks v. Delaware Does Not Require Disclosure of FISA Materials.............52

VI. (U) CONCLUSION.....................................................................................................54

## TABLE OF AUTHORITIES

<u>FEDERAL CASES</u>

*ACLU Found. of So. Cal. v. Barr,*
  952 F.2d 457 (D.C. Cir. 1991) ..................................................................... 20, 31

*Al-Kidd v. Gonzalez,*
  No. CV-05-093, 2008 WL 5123009
  (D. Idaho, Dec. 4, 2008) ............................................................................. 50

*Baldrawi v. Dep't of Homeland Security,*
  596 F. Supp. 2d 389 (D.Conn. 2009) ......................................................... 50

*Berger v. New York,*
  388 U.S. 41, 59-60 (1967) ............................................................................. 47

*CIA v. Sims,*
  471 U.S. 159 (1985) ....................................................................................... 19

*Franks v. Delaware,*
  438 U.S. 154 (1978) ................................................................................ 52, 53

*Halperin v. CIA,*
  629 F.2d 144 (D.C. Cir. 1980) ................................................................... 20

*In re Grand Jury Proceedings of the Spec. Apr. 2002 Grand Jury,*
  347 F.3d 197 (7th Cir. 2003) ................................................................. 17, 26

*In re Kevork,*
  634 F. Supp. 1002 (C.D. Cal. 1985), *aff'd,*
  788 F.2d 566 (9th Cir. 1986) ................................................................. 18, 34

*In re Sealed Case,*
  310 F.3d 717 (FISA Ct. Rev. 2002) ............................... 23, 25, 33, 34, 41, 44, 48

*Los Angeles Cnty. v. Davis,*
  440 U.S. 625 (1979) ..................................................................................... 41

*Massachusetts v. Sheppard,*
  468 U.S. 981 (1984) ..................................................................................... 28

*Mayfield v. United States,*
    504 F. Supp. 2d 1023 (D. Or. 2007), *vacated,*
    599 F.3d 964 (9th Cir. 2010) ............................................................. 41

*Phillippi v. CIA,*
    655 F.2d 1325 (D.C. Cir. 1981) .......................................................... 29

*Scott v. United States,*
    436 U.S. 128 (1978) ............................................................................ 26

*United States v. Abu-Jihaad,*
    531 F. Supp. 2d 299 (D. Conn. 2008), *aff'd,*
    630 F.3d 102 (2d Cir. 2010) .......................................................... *passim*

*United States v. Ahmed,*
    No. 1:06-CR-147, 2009 U.S. Dist. Lexis 120007
    (N.D. Ga. Mar. 19, 2009) ............................................. 22, 23, 24, 26, 28, 48, 56

*United States v. Alwan,*
    No. 1:11-CR-13, 2012 WL 399154
    (W.D. Ky. Feb. 7, 2012) ...................................................................... 26

*United States v. Amawi,*
    N. 3:06-CR-719, 2009 WL 961143
    (N.D. Ohio, Apr. 7, 2009) ................................................................... 51

*United States v. Badia,*
    827 F.2d 1458 (11th Cir. 1987) .............................................. 18, 26, 40

*United States v. Belfield,*
    692 F.2d 141 (D.C. Cir. 1982) ............................. 16, 18, 20, 21, 45, 53

*United States v. Benkahla,*
    437 F. Supp. 2d 541 (E.D. Va. 2006) .................................... 21, 41, 47

*United States v. Bin Laden,*
    126 F. Supp. 2d 264 (S.D.N.Y. 2000) ......................................... 33, 34

*United States v. Campa,*
    529 F.3d 980 (11th Cir. 2008) ........................................................... 26

*United States v. Canfield,*
    212 F.3d 713 (2d Cir. 2000) .............................................................. 28

*United States v. Cavanagh,*
807 F.2d 787 (9th Cir. 1987) ............................................................ 23, 24, 25, 44

*United States v. Craighead,*
539 F.3d 1073 (9th Cir. 2008) ............................................................ 32

*United States v. Colkley,*
899 F.2d 297 (4th Cir. 1990) ............................................................ 52

*United States v. Damrah,*
412 F.3d 618 (6th Cir. 2005) ............................................................ 24, 25, 44, 55

*United States v. Daoud*
12 CR-723, 2014 WL 321384 (N.D. Ill. Jan. 29, 2014)
755 F.3d 479 (7th Cir. 2014)
761 F.3d 678 (7th Cir. 2014) ............................................................ 17, 51, 54

*United States v. Duggan,*
743 F.2d 59 (2d Cir. 1984)........................... 16, 17, 25, 26, 27, 28, 40, 44

*United States v. Duka,*
671 F.3d 329 (3d Cir. 2011)........................... 15, 24, 27, 39, 42, 47, 48

*United States v. El-Mezain,*
664 F.3d 467 (5th Cir. 2011) ............................................ 15, 16, 17, 20, 24, 54

*United States v. Falcone,*
364 F. Supp. 877, 886 (D. N.J. 1973), *aff'd,*
500 F.2d 1401 (3rd Cir. 1974) ........................................................ 36, 37

*United States v. Falvey,*
540 F. Supp. 1306 (E.D.N.Y. 1982)........................... 21, 26, 44, 45, 46

*United States v. Garcia,*
413 F.3d 201 (2d Cir. 2005)............................................................ 27

*United States v. Gowadia,*
No. 05-00486, 2009 WL 1649714
(D. Haw. June 8, 2009)............................................................ 18, 21

*United States v. Hammoud,*
    381 F.3d 316 (4th Cir. 2004), *rev'd on other grounds,*
    543 U.S. 1097 (2005), *op. reinstated in pertinent part,*
    405 F.3d 1034 (4th Cir. 2005) ................................................................ 34, 35, 36

*United States v. Hassoun,*
    No. 04-60001, 2007 WL 1068127
    (S.D. Fla. Apr. 4, 2007) ............................................................................ 18, 53

*United States v. Hill,*
    59 F.3d 966 (9th Cir. 2006) ............................................................................. 23

*United States v. Isa,*
    923 F.2d 1300 (8th Cir. 1991) ............................................................... 17, 36, 45

*United States v. Islamic Am. Relief Agency,*
    No. 07-00087-CR-W-NKL, 2009 WL 5169536
    (W.D. Mo. Dec. 21, 2009) ............................................................ 16, 19, 26, 27, 36

*United States v. Lahiji,*
    No. 3:10-506, 2013 U.S. Dist. LEXIS 18660
    (D. Or. Feb. 12, 2013) ...................................................................................... 45

*United States v. Jamal,*
    No. CV 09-0332, 2011 U.S. Dist. LEXIS 12224
    (D. Ariz. Feb. 7, 2011) ..................................................................................... 45

*United States v. Jayyousi,*
    No. 04-60001, 2007 WL 851278 (S.D. Fla. Mar. 15, 2007), *aff'd,*
    657 F.3d 1085 (11th Cir. 2011) .............................................................. 18, 21, 41

*United States v. Joseph,*
    709 F.3d 1082 (11th Cir. 2013) ....................................................................... 23

*United States v. Johnson,*
    952 F.2d 565 (1st Cir. 1991)............................................................................. 40

*United States v. Kashmiri,*
    No. 09-CR-830-4, 2010 WL 4705159
    (N.D. Ill. Nov. 10, 2010) ...................................................... 16, 18, 26, 27, 41, 53

*United States v. Leon,*
    468 U.S. 897 (1984) .............................................................................. 27, 28, 56

*United States v. Marzook,*
    435 F. Supp. 2d 778 (N.D. Ill. 2006) ................................................. 41

*United States v. Medunjanin,*
    No. 10-CR-19-1, 2012 WL 526428
    (S.D.N.Y. Feb. 16, 2012) ................................................................... 37

*United States v. Megahey,*
    553 F. Supp. 1180 (E.D.N.Y. 1982) ..................................... 21, 45, 46

*United States v. Mubayyid,*
    521 F. Supp. 2d 125 (D. Mass. 2007) ........................... 17, 26, 34, 36, 41, 44, 53

*United States v. Nicholson,*
    No. 09-CR-40, 2010 WL 1641167 (D. Or. Apr. 21, 2010)
    955 F. Supp. 588, 592 & n. 11 (E.D. Va. 1997)) ................. 16, 17, 21, 26, 45, 51

*United States v. Ning Wen,*
    477 F.3d 896 (7th Cir. 2007) .................................... 25, 27, 41, 44, 56

*United States v. Ott,*
    827 F.2d 473 (9th Cir. 1987) ............................................................. 19

*United States v. Pelton,*
    835 F.2d 1067 (4th Cir. 1987) ....................................... 15, 25, 40, 44

*United States v. Rahman,*
    861 F. Supp. 247 (S.D.N.Y. 1994), *aff'd,*
    189 F.3d 88 (2d Cir. 1999) ..................................................... 26, 33, 34

*United States v. Robinson,*
    724 F.3d 878 (7th Cir. 2013) ............................................................ 23

*United States v. Rosen,*
    447 F. Supp. 2d 538 (E.D. Va. 2006) ........................... 122, 17, 26, 34

*United States v. Salameh,*
    152 F.3d 88 (2d Cir. 1998) ................................................................ 34

*United States v. Sarkissian,*
   841 F.2d 959, 965 (9th Cir. 1988) ....................................................... 40

*United States v. Sattar,*
   No. 02-CR-395, 2003 WL 22137012
   (S.D.N.Y. 2003) ................................................................................... 17

*United States v. Sherifi,*
   793 F. Supp. 2d 751 (E.D.N.C. 2011) .............................................. 26, 38, 42, 48

*United States v. Shnewer,*
   No. 07-459, 2008 U.S. Dist. LEXIS 112001
   (D. N.J Dec. 29, 2009) ................................................................. 52, 53

*United States v. Spanjol,*
   720 F. Supp. 55 (E.D. Pa. 1989), *aff'd,*
   958 F.2d 365 (3d Cir. 1992) ............................................................. 17, 20, 54

*United States v. Stewart,*
   590 F.3d 93 (2d Cir. 2009) ................................................................ 17

*United States v. Truong Dinh Hung,*
   629 F.2d 908 (4th Cir. 1980) ............................................................ 39

*United States v. Thomson,*
   752 F. Supp. 75 (W.D.N.Y. 1990) .................................................. 17, 18, 34, 35

*United States v. United States District Court,*
   407 U.S. 297 (1972) ....................................................................... 24, 25, 43

*United States v. U.S. Gypsum Co.,*
   333 U.S. 364 (1948) ........................................................................ 27

*United States v. Warsame,*
   547 F. Supp. 2d 982 (D. Minn. 2008) .................... 16, 18, 23, 25, 26, 41, 44, 45

*United States v. Yunis,*
   867 F.2d 617 (D.C. Cir. 1989) ......................................................... 19

U.S. CONSTITUTION

Amend. I ........................................................................................................ 12

Amend. IV  ............................................................... 24, 25, 38, 39, 43, 44, 47, 48

Amend. VI ................................................................................................ 38, 45

FEDERAL STATUTES

50 U.S.C. § 1801 ............................................................ 4, 7, 9, 11, 12, 14, 36

50 U.S.C. §§ 1801-1812 ................................................................................ 4

50 U.S.C. § 1803 ............................................................................................ 5

50 U.S.C. § 1804 ................................................................................. 6, 7, 9, 38

50 U.S.C. § 1805 ................................................... 6, 10, 12, 13, 14, 47, 48

50 U.S.C. § 1806 .................................................................................passim

50 U.S.C. § 1821 ........................................................... 4, 7, 9, 10, 11, 14, 36

50 U.S.C. §§ 1821-1829 ............................................................................... 4

50 U.S.C. § 1823 ................................................................................... 7, 8, 9

50 U.S.C. § 1824 ................................................... 6, 10, 12, 14, 47, 48

50 U.S.C. § 1825 .................................................................................passim

Uniting and Strengthening America by Providing Appropriate Tools Required to
    Intercept and Obstruct Terrorism Act ("PATRIOT Act"), Pub. L. No. 107-56,
    115 Stat. 272 (2001) ............................................................................. 6

OTHER AUTHORITIES

Exec. Order No. 13526, 32 C.F.R. 2001 (2003), *reprinted as amended in*
    75 Fed. Reg. 37254 (June 28, 2010)..................................................... 50

Fed. R. Crim. P. 41 ..................................................................................... 23

H.R. Rep. No. 95-1283, 95th Cong., 2d Sess., Pt. 1 (1978) ............................. 34, 35, 37

S. Rep. No. 95-701, 95th Cong., 2d Sess. (1978) ....................................... 25, 35, 36, 44

## I.     INTRODUCTION

The Government is filing this unclassified memorandum in opposition to defendant

Fazliddin Kurbanov's "Amended Motion to Suppress FISA acquired Evidence and Disclose

Same to Defendant and Memorandum in Support" (ECF No. 64) (hereinafter, referred to as

"Kurbanov's Amended Motion").[1]  In essence, the defendant's motion seeks: (1) suppression of

any evidence obtained through FISA; and (2) discovery of the applications supporting the

issuance of the FISA orders.

The defendant's motion has triggered this Court's review of the materials related to the

FISA-authorized[2] electronic surveillance and physical searches[3] to determine whether the FISA

information was lawfully acquired and whether the electronic surveillance and physical searches

were made in conformity with an order of authorization or approval (i.e., were "lawfully

authorized and lawfully conducted").  Whenever any motion or request is made by an aggrieved

person pursuant to any other statute or rule of the United States . . . before any court or other

authority of the United States . . . to discover or obtain applications or orders or other materials

relating to FISA-authorized electronic surveillance, physical searches, or both, the Government

may file an affidavit under oath in which the Attorney General claims that disclosure or an

adversary hearing would harm the national security of the United States and the Court shall then

review the information (hereinafter, referred to as the "FISA materials") in camera and ex parte.[4]

---

[1] **[CLASSIFIED MATERIAL REDACTED]**

[2] **[CLASSIFIED MATERIAL REDACTED]**

[3] **[CLASSIFIED MATERIAL REDACTED]**

[4] The Attorney General's affidavit ("Declaration and Claim of Privilege") is filed both publicly and attached as part of the Government's classified filing. See Sealed Exhibit 1.

50 U.S.C. §§ 1806(f), 1825(g). The Government respectfully submits that, for the reasons set forth below, this Court should conduct an in camera, ex parte review of the documents relevant to the defendant's motion in accordance with the provisions of 50 U.S.C. §§ 1806(f) and 1825(g).[5]

From its in camera, ex parte review of the FISA materials, the Court will conclude that: (1) the electronic surveillance and physical searches at issue in this case were both lawfully authorized and lawfully conducted; (2) disclosure to the defendant of the FISA materials and the Government's classified submissions is not authorized because the Court can make an accurate determination of the legality of the surveillance and searches without disclosing the FISA materials or portions thereof; (3) the fruits of electronic surveillance and physical searches should not be suppressed; and (4) the defendant's motion for disclosure of the FISA materials should be denied.

## A. BACKGROUND

Kurbanov was indicted on May 16, 2013, and charged with conspiracy to provide material support to terrorists, in violation of 18 U.S.C. § 2339A, conspiracy to provide material support to a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B, and possession of an unregistered firearm, in violation of 26 U.S.C. § 5861(d). (ECF No. 1). On November 14, 2014, a superseding indictment was returned adding one count of attempt to provide material support to terrorists, in violation of 18 U.S.C. § 2339A, and one count of attempt to provide material support to a designated foreign terrorist organization, in violation of 18 U.S.C. § 2339B. (ECF No. 74).

**[CLASSIFIED MATERIAL REDACTED]**

---

[5] **[CLASSIFIED MATERIAL REDACTED]**

3

On May 21, 2013, pursuant to 50 U.S.C. §§ 1806(c) and 1825(d), the United States provided notice to the defendant that it "intends to offer into evidence, or otherwise use or disclose at pre-trial hearings, trial, and at other proceedings in this case, information obtained or derived from electronic surveillance and physical searches conducted pursuant to the Foreign Intelligence Surveillance Act of 1978 ("FISA"), as amended, 50 U.S.C. §§ 1801-1812 and 1821-1829." (ECF No. 14).

On October 15, 2014, Kurbanov filed a motion seeking disclosure of the FISA materials and suppression of information obtained or derived from FISA collection. (ECF No. 59). On October 16, 2014, Kurbanov filed an amended motion seeking disclosure of the FISA materials and suppression of information obtained or derived from FISA collection. (ECF No. 64).

### [CLASSIFIED MATERIAL REDACTED][6]

As detailed below, this Memorandum: (1) presents an overview of the FISA authorities at issue in this case; (2) discusses the FISA process; (3) addresses the manner in which the Court should conduct its in camera, ex parte review of the FISA materials; (4) summarizes in detail the facts supporting the FISC's probable cause determinations with respect to the targets of the electronic surveillance and physical searches and to the facilities, places, premises, or property targeted[7] (all of which information is contained fully in the exhibits in the Sealed Appendix); (5) discusses the relevant minimization procedures; and (6) addresses the defendant's arguments in support of his motion. The Government submits this Memorandum and supporting FISA materials not only to oppose the defendant's requests, but also to support the United States'

---

[6] As a result of the redactions, the pagination and footnote numbering of the classified memorandum and the unclassified memorandum are different.

[7] **[CLASSIFIED MATERIAL REDACTED]**

4

request, pursuant to FISA, that this Court: (1) conduct an in camera, ex parte review of the FISA

materials; (2) find that the FISA information at issue was lawfully acquired and that the

electronic surveillance and physical searches were conducted in conformity with an order of

authorization or approval; and (3) order that none of the FISA materials be disclosed to the

defense, and instead, that they be maintained by the United States under seal.

### B. **OVERVIEW OF THE FISA AUTHORITIES**

### [CLASSIFIED MATERIAL REDACTED]

#### 1. [CLASSIFIED MATERIAL REDACTED]

### [CLASSIFIED MATERIAL REDACTED]

#### 2. [CLASSIFIED MATERIAL REDACTED]

### [CLASSIFIED MATERIAL REDACTED]

#### 3. **The FISC's Findings**

### [CLASSIFIED MATERIAL REDACTED]

## II.   **THE FISA PROCESS**

### A. **OVERVIEW OF FISA**

Enacted in 1978, and subsequently amended, FISA authorizes the Chief Justice of the

United States to designate eleven United States District Judges to sit as judges of the FISC. 50

U.S.C. § 1803(a)(1). The FISC judges are empowered to consider ex parte applications

submitted by the Executive Branch for electronic surveillance and physical searches when a

significant purpose of the application is to obtain foreign intelligence information, as defined in

FISA. Rulings of the FISC are subject to review by the Foreign Intelligence Surveillance Court

of Review ("FISC of Review"), which is composed of three United States District or Circuit

Judges who are designated by the Chief Justice. 50 U.S.C. § 1803(b).

As originally enacted, FISA required that a high-ranking member of the Executive Branch of Government certify that "the purpose" of the FISA application was to obtain foreign intelligence information. In 2001, FISA was amended as part of the Uniting and Strengthening America by Providing Appropriate Tools Required to Intercept and Obstruct Terrorism Act ("USA PATRIOT Act").[8] One change to FISA accomplished by the USA PATRIOT Act is that a high-ranking official is now required to certify that the acquisition of foreign intelligence information is "a significant purpose" of the requested surveillance. 50 U.S.C. § 1804(a)(6)(B).

**[CLASSIFIED MATERIAL REDACTED]**[9]

### B. THE FISA APPLICATION

FISA provides a statutory procedure whereby the Executive Branch may obtain a judicial order authorizing the use of electronic surveillance, physical searches, or both, within the United States where a significant purpose is the collection of foreign intelligence information.[10] 50

---

[8] Pub. L. No. 107-56, 115 Stat. 272 (2001).

[9] If no FISC order authorizing the electronic surveillance or physical searches is issued, emergency surveillance or searches must terminate when the information sought is obtained, when the FISC denies an application for an order, or after the expiration of seven days from the time of the emergency employment, whichever is earliest. See 50 U.S.C. §§ 1805(e)(3), 1824(e)(3). Moreover, if no FISC order is issued, absent a showing of good cause, the FISC shall cause to be served on any U.S. person named in the application, and others in the FISC's discretion, notice of the fact of the application, the period of the surveillance, and the fact that during the period information was or was not obtained. See 50 U.S.C. § 1806(j); see also 50 U.S.C. § 1824(j)(1) (physical searches). In addition, if no FISC order is issued, neither information obtained nor evidence derived from the emergency electronic surveillance or physical search may be disclosed in any court or other proceeding, and no information concerning a United States person acquired from the electronic surveillance or physical search may be used in any other manner by Federal officers or employees without the person's consent, except with the approval of the Attorney General if the information indicates a threat of death or serious bodily harm. See 50 U.S.C. §§ 1805(e)(5), 1824(e)(5).

[10] **[CLASSIFIED MATERIAL REDACTED]**

6

U.S.C. §§ 1804(a)(6)(B), 1823(a)(6)(B).  Under FISA, "[f]oreign intelligence information"

means:

> (1) information that relates to, and if concerning a United States person[11] is necessary to, the ability of the United States to protect against—
>
>> (A) actual or potential attack or other grave hostile acts of a foreign power or an agent of a foreign power;
>>
>> (B) sabotage, international terrorism, or the international proliferation of weapons of mass destruction by a foreign power or an agent of a foreign power; or
>>
>> (C) clandestine intelligence activities by an intelligence service or network of a foreign power or by an agent of a foreign power; or
>
> (2) information with respect to a foreign power or foreign territory that relates to, and if concerning a United States person is necessary to –
>
>> (A) the national defense or the security of the United States; or
>>
>> (B) the conduct of the foreign affairs of the United States.

50 U.S.C. § 1801(e); see also 50 U.S.C. § 1821(1), adopting the definitions from 50 U.S.C.

§ 1801.  With the exception of emergency authorizations, FISA requires that a court order be

obtained before any electronic surveillance or physical searches may be conducted.

An application to conduct electronic surveillance pursuant to FISA must contain, among

other things:

> (1) the identity of the federal officer making the application;
>
> (2) the identity, if known, or a description of the specific target of the electronic surveillance;
>
> (3) a statement of the facts and circumstances supporting probable cause to believe that the target is a foreign power or an agent of a foreign power, and that each facility or place at which the electronic surveillance is directed is being used, or is about to be used, by a foreign power or an agent of a foreign power;

---

[11] **[CLASSIFIED MATERIAL REDACTED]**

(4) a statement of the proposed minimization procedures to be followed;

(5) a detailed description of the nature of the information sought and the type of communications or activities to be subjected to the surveillance;

(6) a certification, discussed below, of a high-ranking official;

(7) a summary of the manner or means by which the electronic surveillance will be effected and a statement whether physical entry is required to effect the electronic surveillance;

(8) the facts concerning and the action taken on all previous FISA applications involving any of the persons, facilities, or places specified in the application; and

(9) the proposed duration of the electronic surveillance.

50 U.S.C. § 1804(a)(1)-(9).

An application to conduct a physical search pursuant to FISA must contain similar information as an application to conduct electronic surveillance except that an application to conduct a physical search must also contain a statement of the facts and circumstances that justify an applicant's belief that "the premises or property to be searched contains foreign intelligence information" and that each "premises or property to be searched is or is about to be, owned, used, possessed by, or is in transit to or from" the target. 50 U.S.C. §§ 1823(a)(1)-(8), (a)(3)(B),(C).

### 1. The Certification

An application to the FISC for a FISA order must include a certification from a high-ranking executive branch official with national security responsibilities that:

(A) the certifying official deems the information sought to be foreign intelligence information;

(B) a significant purpose of the surveillance is to obtain foreign intelligence information;

(C) such information cannot reasonably be obtained by normal investigative techniques;

8

(D) designates the type of foreign intelligence information being sought according to the categories described in [50 U.S.C. §] 1801(e); and

(E) includes a statement of the basis for the certification that –

> (i) the information sought is the type of foreign intelligence information designated; and

> (ii) such information cannot reasonably be obtained by normal investigative techniques.

50 U.S.C. § 1804(a)(6); see also 50 U.S.C. § 1823(a)(6).

## 2. Minimization Procedures

The Attorney General has adopted, and the FISC has approved, minimization procedures that regulate the acquisition, retention, and dissemination of non-publicly available information concerning unconsenting United States persons obtained through FISA-authorized electronic surveillance or physical searches, including persons who are not the targets of the FISA authorities. FISA requires that such minimization procedures be:

> reasonably designed in light of the purpose and technique of the particular surveillance, to minimize the acquisition and retention, and prohibit the dissemination, of nonpublicly available information concerning unconsenting United States persons consistent with the need of the United States to obtain, produce, and disseminate foreign intelligence information.

50 U.S.C. §§ 1801(h)(1), 1821(4)(A).

In addition, minimization procedures also include "procedures that allow for the retention and dissemination of information that is evidence of a crime which has been, is being, or is about to be committed and that is to be retained or disseminated for law enforcement purposes." 50 U.S.C. § 1801(h)(3), 1821(4)(c).

**[CLASSIFIED MATERIAL REDACTED]**.

### 3. Attorney General's Approval

FISA further requires that the Attorney General approve applications for electronic

surveillance, physical searches, or both, before they are presented to the FISC.

### C. THE FISC'S ORDERS

Once approved by the Attorney General, the application is submitted to the FISC and

assigned to one of its judges. The FISC may approve the requested electronic surveillance,

physical searches, or both, only upon finding, among other things, that:

> (1) the application has been made by a "Federal officer" and has been approved by the Attorney General;
>
> (2) there is probable cause to believe that (A) the target of the electronic surveillance and/or physical search is a foreign power or an agent of a foreign power, and that (B) the facilities or places at which the electronic surveillance is directed are being used, or are about to be used, by a foreign power or an agent of a foreign power (or that the premises or property to be searched is, or is about to be, owned, used, possessed by, or is in transit to or from, a foreign power or an agent of a foreign power);
>
> (3) the proposed minimization procedures meet the statutory requirements set forth in 50 U.S.C. § 1801(h) (electronic surveillance) and 50 U.S.C. § 1821(4) (physical search);
>
> (4) the application contains all of the statements and certifications required by Section 1804 or Section 1823; and
>
> (5) if the target is a United States person, that the certifications are not clearly erroneous.

50 U.S.C. §§ 1805(a)(1)-(4), 1824(a)(1)-(4).

FISA defines "foreign power" to mean –

> (1) a foreign government or any component, thereof, whether or not recognized by the United States;
>
> (2) a faction of a foreign nation or nations, not substantially composed of United States persons;

     (3) an entity that is openly acknowledged by a foreign government or governments to be directed and controlled by such foreign government or governments;

     (4) a group engaged in international terrorism or activities in preparation therefor;

     (5) a foreign-based political organization, not substantially composed of United States persons;

     (6) an entity that is directed and controlled by a foreign government or governments; or

     (7) an entity not substantially composed of United States persons that is engaged in the international proliferation of weapons of mass destruction.

50 U.S.C. §§ 1801(a)(1)-(7); see also 50 U.S.C. § 1821(1) (adopting definitions from 50 U.S.C.

§ 1801).

     "Agent of a foreign power" means –

     (1) any person other than a United States person, who—

     (A) acts in the United States as an officer or employee of a foreign power, or as a member of a foreign power as defined in subsection (a)(4);

     (B) acts for or on behalf of a foreign power which engages in clandestine intelligence activities in the United States contrary to the interests of the United States, when the circumstances of such person's presence in the United States indicate that such person may engage in such activities in the United States, or when such person knowingly aids or abets any person in the conduct of such activities knowingly conspires with any person to engage in such activities;

     (C) engages in international terrorism or activities in preparation therefore [sic];

     (D) engages in the international proliferation of weapons of mass destruction, or activities in preparation therefor; or

     (E) engages in the international proliferation of weapons of mass destruction, or activities in preparation therefor for or on behalf of a foreign power; or

     (2) any person who –

(A) knowingly engages in clandestine intelligence gathering activities for or on behalf of a foreign power, which activities involve or may involve a violation of the criminal statutes of the United States;

(B) pursuant to the direction of an intelligence service or network of a foreign power, knowingly engages in any other clandestine intelligence activities for or on behalf of such foreign power, which activities involve or are about to involve a violation of the criminal statutes of the United States;

(C) knowingly engages in sabotage or international terrorism, or activities that are in preparation therefor, for or on behalf of a foreign power;

(D) knowingly enters the United States under a false or fraudulent identity for or on behalf of a foreign power or, while in the United States, knowingly assumes a false or fraudulent identity for or on behalf of a foreign power; or

(E) knowingly aids or abets any person in the conduct of activities described in [the subparagraphs above] . . . or knowingly conspires with any person to engage in activities described in [the subparagraphs above.]

50 U.S.C. §§ 1801(b)(1) and (2); see also 50 U.S.C. § 1821(1) (adopting definitions from 50 U.S.C. § 1801).

FISA specifies that no United States person may be considered a foreign power or an agent of a foreign power solely on the basis of activities protected by the First Amendment to the Constitution of the United States.  50 U.S.C. §§ 1805(a)(2)(A), 1824(a)(2)(A).  Although protected First Amendment activities cannot form the sole basis for FISA-authorized electronic surveillance or physical searches, they may be considered by the FISC if there is other activity indicative that the target is an agent of a foreign power.  United States v. Rosen, 447 F. Supp. 2d 538, 549-50 (E.D. Va. 2006); United States v. Rahman, 861 F. Supp. 247, 252 (S.D.N.Y. 1994), aff'd, 189 F.3d 88 (2d Cir. 1999).  Additionally, FISA provides that "[i]n determining whether or not probable cause exists . . . a judge may consider past activities of the target, as well as facts

12

and circumstances relating to current or future activities of the target." 50 U.S.C. §§ 1805(b),

1824(b).

If the FISC has made all of the necessary findings and is satisfied that the FISA

application meets the statutory provisions, the FISC issues an ex parte order authorizing the

electronic surveillance, physical searches, or both, requested in the application. 50 U.S.C.

§§ 1805(a), 1824(a). The order must specify:

> (1) the identity, if known, or a description of the specific target of the collection;

> (2) the nature and location of each facility or place at which the electronic surveillance will be directed or of each of the premises or properties that will be searched;

> (3) the type of information sought to be acquired and the type of communications or activities that are to be subjected to the electronic surveillance, or the type of information, material, or property that is to be seized, altered, or reproduced through the physical search;

> (4) the manner and means by which electronic surveillance will be effected and whether physical entry will be necessary to effect that surveillance, or a statement of the manner in which the physical search will be conducted;

> (5) the period of time during which electronic surveillance is approved and/or the authorized scope of each physical search; and

> (6) the applicable minimization procedures.

50 U.S.C. §§ 1805(c)(1) and 2(A); 1824(c)(1) and 2(A).

Under FISA, electronic surveillance or physical searches targeting a United States person

may be approved for up to ninety days, and those targeting a non-United States person may be

approved for up to one-hundred and twenty days. 50 U.S.C. §§ 1805(d)(1), 1824(d)(1).[12]

Extensions may be granted, but only if the United States submits another application that

---

[12] **[CLASSIFIED MATERIAL REDACTED]**

complies with FISA's requirements.  An extension for electronic surveillance or physical searches targeting a United States person may be approved for up to ninety days, and one targeting a non-United States person may be approved for up to one year.[13]  50 U.S.C. §§ 1805(d)(2), 1824(d)(2).

## III.    THE DISTRICT COURT'S REVIEW OF FISC ORDERS

FISA authorizes the use in a criminal prosecution of information obtained or derived from any FISA-authorized electronic surveillance or physical search, provided that advance authorization is obtained from the Attorney General, 50 U.S.C. §§ 1806(b), 1825(c), and that proper notice is subsequently given to the court and to each aggrieved person against whom the information is to be used.[14]  50 U.S.C. §§ 1806(c)-(d), 1825(d)-(e).  Upon receiving notice, an aggrieved person against whom the information is to be used may move to suppress the use of the FISA information on two grounds: (1) that the information was unlawfully acquired; or (2) that the electronic surveillance or physical search was not conducted in conformity with an order of authorization or approval.  50 U.S.C. §§ 1806(e), 1825(f).  In addition, FISA contemplates that a defendant may file a motion or request under any other statute or rule of the United States to discover or obtain applications or orders or other materials relating to electronic surveillance

---

[13] The FISC retains the authority to review, before the end of the authorized period of electronic surveillance or physical searches, the Government's compliance with the requisite minimization procedures.  50 U.S.C. §§ 1805(d)(3), 1824(d)(3).

[14] An "aggrieved person" is defined as the target of electronic surveillance or "any other person whose communications or activities were subject to electronic surveillance," 50 U.S.C. § 1801(k), as well as "a person whose premises, property, information, or material is the target of physical search" or "whose premises, property, information, or material was subject to physical search."  50 U.S.C. § 1821(2).  Kurbanov is an "aggrieved person" under FISA, and as noted above, he was provided with notice of his status as such and of the Government's intent to use FISA-obtained or -derived information against him at trial.

or physical searches, i.e., the FISA materials, 50 U.S.C. §§ 1806(f), 1825(g).[15]  When a

defendant moves to suppress FISA information under 50 U.S.C. §§ 1806(e) or 1825(f), or seeks

to discover the FISA materials under some other statute or rule, the motion or request is

evaluated using FISA's probable cause standard, which is discussed below, and not the probable

cause standard applicable to criminal warrants.  See, e.g., United States v. El-Mezain, 664 F.3d

467, 564 (5th Cir. 2011); United States v. Duka, 671 F.3d 329, 336-37 (3d Cir. 2011) (rejecting

appellant's challenge to FISA's probable cause standard because it does not require any

indication that a crime has been committed); United States v. Pelton, 835 F.2d 1067, 1075 (4th

Cir. 1987).

### A. **THE REVIEW IS TO BE CONDUCTED IN CAMERA AND EX PARTE**

In assessing the legality of FISA-authorized electronic surveillance and physical

searches, or both, the district court,

> shall, notwithstanding any other law, if the Attorney General files
> (as he has filed in this proceeding) an affidavit or declaration under
> oath that disclosure or an adversary hearing would harm the
> national security of the United States, review in camera and ex
> parte the application, order, and such other materials relating to the
> surveillance as may be necessary to determine whether the
> surveillance of the aggrieved person was lawfully authorized and
> conducted.[16]

50 U.S.C. §§ 1806(f), 1825(g).  On the filing of the Attorney General's affidavit or declaration,

such as has been filed here, the court "may disclose to the aggrieved person, under appropriate

security procedures and protective orders, portions of the application, order, or other materials

---

[15] Here, the defendant did not file a motion under one such statute or rule.  Rather he cited to sections of the FISA statute that do not provide a vehicle for such disclosure.  Nevertheless, we are responding as if the defendant had made the appropriate arguments for such disclosure.

[16] **[CLASSIFIED MATERIAL REDACTED]**

relating to the surveillance [or physical search] only where such disclosure is necessary to make

an accurate determination of the legality of the surveillance [or search]."[17]  50 U.S.C. §§ 1806(f),

1825(g).  Thus, the propriety of the disclosure of any FISA applications or orders to a defendant

may not even be considered unless and until the district court has first concluded that it is unable

to make an accurate determination of the legality of the acquired collection after reviewing the

Government's submissions (and any supplemental pleadings that the district court may request)

in camera and ex parte.  See El-Mezain, 664 F.3d at 565; United States v. Abu-Jihaad, 630 F.3d

102, 129 (2d Cir. 2010); United States v. Belfield, 692 F.2d 141, 147 (D.C. Cir. 1982); United

States v. Islamic Am. Relief Agency ("IARA"), No. 07-00087-CR-W-NKL, 2009 WL 5169536,

at *3-4 (W.D. Mo. Dec. 21, 2009); United States v. Nicholson, No. 09-CR-40, 2010 WL

1641167, at *4 (D. Or. Apr. 21, 2010) ("After an in-camera review, the court 'has the discretion

to disclose portions of the documents, under appropriate protective procedures, only if [the court]

decides that such disclosure is necessary to make an accurate determination of the legality of the

surveillance.'") (quoting United States v. Duggan, 743 F.2d 59, 78 (2d Cir. 1984)) (emphasis in

Nicholson); United States v. Kashmiri, No. 09-CR-830, 2010 WL 4705159, at *2 (N.D. Ill. Nov.

10, 2010).

### 1. In Camera, Ex Parte Review is the Rule

Federal courts have repeatedly and consistently held that FISA "anticipates that an ex

parte, in camera determination is to be the rule," with disclosure and an adversarial hearing being

the "exception, occurring only when necessary."  Belfield, 692 F.2d at 147 (emphasis in

---

[17] In United States v. Warsame, 547 F. Supp. 2d 982, 987 (D. Minn. 2008), the court addressed
the meaning of "necessary" in this context: "[t]he legislative history explains that such disclosure
is 'necessary' only where the court's initial review indicates that the question of legality may be
complicated" by factual misrepresentations, insufficient identification of the target, or failure to
comply with the minimization standards in the order.

original); <u>accord</u>, <u>El-Mezain</u>, 664 F.3d at 567 ("[D]isclosure of FISA materials is the exception

and <u>ex parte, in camera</u> determination is the rule") (citing <u>Abu Jihaad</u>, 630 F.3d at 129); <u>Duggan</u>,

743 F.2d at 78; <u>Rosen</u>, 447 F. Supp. 2d at 546; <u>Nicholson</u>, 2010 WL 1641167 at *3-4; <u>United

States v. Spanjol</u>, 720 F. Supp. 55, 59 (E.D. Pa. 1989), <u>aff'd</u>, 958 F.2d 365 (3d Cir. 1992).

 In fact, every court but one  (whose decision was subsequently overturned by an appellate

court)[18] that has addressed a motion to disclose FISA materials or to suppress FISA information

has been able to reach a conclusion as to the legality of the FISA collection at issue based on its

<u>in camera, ex parte</u> review.  <u>See, e.g.</u>, <u>El-Mezain</u>, 664 F.3d at 566 (quoting district court's

statement that no court has ever held an adversarial hearing to assist the court); <u>In re Grand Jury

Proceedings of the Special Apr. 2002 Grand Jury ("In re Grand Jury Proceedings")</u>, 347 F.3d

197, 203 (7th Cir. 2003) (noting that no court has ever ordered disclosure of FISA materials);

<u>United States v. Isa</u>, 923 F.2d 1300, 1306 (8th Cir. 1991); <u>Spanjol</u>, 720 F. Supp. at 58-59; <u>United

States v. Sattar</u>, No. 02-CR-395, 2003 WL 22137012, at *6 (S.D.N.Y. 2003) (citing <u>United

States v. Nicholson</u>, 955 F. Supp. 588, 592 & n. 11 (E.D. Va. 1997)) (noting "this court knows of

no instance in which a court has required an adversary hearing or disclosure in determining the

legality of a FISA surveillance"); <u>United States. v. Stewart</u>, 590 F.3d 93 (2d Cir. 2009); <u>United

States v. Thomson</u>, 752 F. Supp. 75, 79 (W.D.N.Y. 1990); <u>United States v. Abu-Jihaad</u>, 531 F.

Supp. 2d 299, 310 (D. Conn. 2008), <u>aff'd</u>, 630 F.3d 102, 129-30 (2d Cir. 2010); <u>United States v.

Mubayyid</u>, 521 F. Supp. 2d 125, 130 (D. Mass. 2007); <u>Rosen</u>, 447 F. Supp. 2d at 546; <u>United

---

[18] The district court in <u>United States v. Daoud</u>, No. 12-CR-723 (N.D. Ill. Jan. 29, 2014), ruled
that it was capable of making the determination, but nevertheless ordered the disclosure of FISA
materials.  The Government appealed the <u>Daoud</u> court's order to the U.S. Court of Appeals for
the Seventh Circuit, which overturned the district court's decision to disclose, stating, "So clear
is it that the materials were properly withheld from defense counsel that there is no need for a
remand to enable the district judge to come to the same conclusion, because she would have to
do so." <u>Daoud,</u> 755 F.3d 479, 485 (7th Cir. 2014).

States v. Gowadia, No. 05-00486, 2009 WL 1649714, at *2 (D. Hawaii June 8, 2009); Kashmiri,

2010 WL 4705159, at *2-3; United States v. Jayyousi, No. 04-60001, 2007 WL 851278, at *7-8

(S.D. Fla. Mar. 15, 2007), aff'd, 657 F.3d 1085 (11th Cir. 2011);[19] United States v. Hassoun,

2007 WL 1068127, *4 (S.D. Fla. April 2, 2007); United States v. Badia, 827 F.2d 1458, 1463

(11th Cir. 1987).

As the exhibits in the Sealed Appendix make clear, there is nothing extraordinary about

the instant FISA-authorized electronic surveillance and physical searches that would justify the

production and disclosure of highly sensitive and classified FISA materials or the suppression of

FISA-obtained or -derived evidence. Here, the FISA materials are well-organized and easily

reviewable by the Court in camera and ex parte, and they are fully and facially sufficient to allow

the Court to make an accurate determination that the FISA information was lawfully acquired

and that the electronic surveillance and physical searches were made in conformity with an order

of authorization or approval. In other words, the materials presented "are straightforward and

readily understood." In re Kevork, 634 F. Supp. 1002, 1008 (C.D. Cal. 1985), aff'd, 788 F.2d

566 (9th Cir. 1986). Moreover, as in other cases, "[t]he determination of legality in this case is

not complex." Belfield, 692 F.2d at 147; see also Warsame, 547 F. Supp. 2d at 987 ("issues

presented by the FISA applications are straightforward and uncontroversial"); Abu-Jihaad, 531

F. Supp. 2d at 310; Thomson, 752 F. Supp. at 79. This Court, much like the aforementioned

courts, is capable of reviewing the FISA materials in camera and ex parte and making the

requisite legal determination without an adversarial hearing. Therefore, the defendant's

argument that disclosure to defense is necessary to ensure the legality of FISA, is unsupported by

the facts and law. (Kurbanov's Amended Motion, at 8-10.)

---

[19] All citations to Jayyousi herein are to the Magistrate Judge's Report and Recommendation
which was adopted and incorporated into the Court's Opinion.

18

In addition to the specific harm that would result from the disclosure of the FISA materials in this case, which is detailed in the classified declaration of a high-ranking FBI official in support of the Attorney General's Declaration and Claim of Privilege, the underlying rationale for non-disclosure is clear: "In the sensitive area of foreign intelligence gathering, the need for extreme caution and sometimes even secrecy may not be overemphasized." United States v. Ott, 827 F.2d 473, 477 (9th Cir. 1987) ("Congress has a legitimate interest in authorizing the Attorney General to invoke procedures designed to ensure that sensitive security information is not unnecessarily disseminated to *anyone* not involved in the surveillance operation in question."); accord, IARA, 2009 WL 5169536, at *3-4.

Confidentiality is critical to national security. "If potentially valuable intelligence sources" believe that the United States "will be unable to maintain the confidentiality of its relationship to them, many [of those sources] could well refuse to supply information." CIA v. Sims, 471 U.S. 159, 175 (1985); see also Phillippi v. CIA, 655 F.2d 1325, 1332-33 (D.C. Cir. 1981). When considering whether the disclosure of classified sources, methods, techniques, or information would harm the national security, federal courts have expressed a great reluctance to replace the considered judgment of Executive Branch officials charged with the responsibility of weighing a variety of subtle and complex factors in determining whether the disclosure of information may lead to an unacceptable risk of compromising the intelligence gathering process, and determining whether foreign agents, spies, and terrorists are capable of piecing together a mosaic of information that, when revealed, could reasonably be expected to harm the national security of the United States. See Sims, 471 U.S. at 180; United States v. Yunis, 867 F.2d 617, 623 (D.C. Cir. 1989) ("Things that did not make sense to the District Judge would make all too much sense to a foreign counter-intelligence specialist who could learn much about

this nation's intelligence-gathering capabilities from what these documents revealed about

sources and methods."); Halperin v. CIA, 629 F.2d 144, 150 (D.C. Cir. 1980) ("each individual

piece of intelligence information, much like a piece of jigsaw puzzle, may aid in piecing together

other bits of information even when the individual piece is not of obvious importance in itself").

An adversary hearing is not only unnecessary to aid the Court in the straightforward task before

it, but such a hearing would create potential dangers that courts have consistently sought to

avoid.

As the Belfield court explained:

> Congress recognized the need for the Executive to engage in and
> employ the fruits of clandestine surveillance without being
> constantly hamstrung by disclosure requirements. The statute is
> meant to "reconcile national intelligence and counterintelligence
> needs with constitutional principles in a way that is consistent with
> both national security and individual rights." In FISA the privacy
> rights of individuals are ensured not through mandatory disclosure,
> but through its provisions for in-depth oversight of FISA
> surveillance by all three branches of government and by a statutory
> scheme that to a large degree centers on an expanded conception of
> minimization that differs from that which governs law enforcement
> surveillance.

692 F.2d at 148 (footnotes and citations omitted); see also ACLU Found. of So. Cal. v. Barr, 952

F.2d 457, 465 (D.C. Cir. 1991) (citing Belfield for the proposition that Section 1806(f) "is an

acceptable means of adjudicating the constitutional rights of persons who have been subjected to

FISA surveillance").

### 2. In Camera, Ex Parte Review is Constitutional

The constitutionality of FISA's in camera, ex parte review provisions has been affirmed

by every federal court that has considered the matter. See, e.g., El-Mezain, 664 F.3d at 567;

Abu-Jihaad, 630 F.3d at 117; Spanjol, 720 F. Supp. at 58-59; United States v. Damrah, 412 F.3d

618, 624 (6th Cir. 2005) ("FISA's requirement that the district court conduct an ex parte, in

20

camera review of FISA materials does not deprive a defendant of due process."); Ott, 827 F.2d at 476-77 (FISA's review procedures do not deprive a defendant of due process); Gowadia, 2009 WL 1649714, at *2; Jayyousi, 2007 WL 851278, at *7-8; United States v. Benkahla, 437 F. Supp. 2d 541, 554 (E.D. Va. 2006); ACLU Foundation, 952 F.2d at 465; United States v. Megahey, 553 F. Supp. 1180, 1194 (E.D.N.Y. 1982) ("ex parte, in camera procedures provided in 50 U.S.C. § 1806(f) are constitutionally sufficient to determine the lawfulness of the electronic surveillance at issue while safeguarding defendant's fourth amendment rights"); United States v. Falvey, 540 F. Supp. 1306, 1315-16 (E.D.N.Y. 1982) (a "massive body of pre-FISA case law of the Supreme Court, [the Second] Circuit and others" supports the conclusion that the legality of electronic surveillance should be determined on an in camera, ex parte basis); Belfield, 692 F.2d at 148-49; Nicholson, 2010 WL 1641167, at *3-4.

In summary, FISA mandates a process by which the district court must conduct an initial in camera, ex parte review of FISA applications, orders, and related materials in order to determine whether the FISA information was lawfully acquired and whether the surveillance and searches were made in conformity with an order of authorization or approval. Such in camera, ex parte review is the rule in such cases and that procedure is constitutional. In this case, the Attorney General has filed the required declaration invoking that procedure, and has declared that disclosure or an adversary hearing would harm national security. Accordingly, an in camera, ex parte review by this Court is the appropriate venue in which to determine whether the FISA information was lawfully acquired and whether the surveillance and searches were made in conformity with an order of authorization or approval.

## B. THE DISTRICT COURT'S SUBSTANTIVE REVIEW

### 1. Standard of Review of Probable Cause

In evaluating the legality of the FISA collection, the district court's review should determine: (1) whether the certification submitted by the Executive Branch in support of a FISA application was properly made; (2) whether the application established the probable cause showing required by FISA; and (3) whether the collection was properly minimized.  See Abu-Jihaad, 630 F.3d at 130-31; see also 50 U.S.C. §§ 1806(f), 1825(g).

Although federal courts are not in agreement as to whether the probable cause determinations of the FISC should be reviewed de novo or accorded due deference, the material under review here satisfies either standard of review.  See Abu-Jihaad, 630 F.3d at 130 ("Although the established standard of judicial review applicable to FISA warrants is deferential, the government's detailed and complete submissions in this case would easily allow it to clear a higher standard of review.")  The Government respectfully submits that it is appropriate to accord due deference to the findings of the FISC, but notes that a number of courts citing the ex parte nature of the proceedings, have also reviewed the FISC's probable cause determination de novo.[20]  While in the minority, other courts, including the Second Circuit in Abu-Jihaad, 630 F.3d at 130, have afforded due deference to the findings of the FISC; accord, United States v. Ahmed, No. 1:06-CR-147, 2009 U.S. Dist. Lexis 120007 at *21-22 (N.D. Ga. Mar. 19, 2009) (FISC's "determination of probable cause should be given 'great deference' by the reviewing court") (citing Illinois v. Gates, 462 U.S. at 236).

In the analogous area of criminal searches and surveillance, the law in the Ninth Circuit, as well as that in other federal circuits, accords great deference to a magistrate judge's probable

---

[20] **[CLASSIFIED MATERIAL REDACTED]**

cause determinations. See, e.g., United States v. Krupa, 658 F.3d 1174, 1177 (9th Cir. 2011) ("We review for clear error a magistrate's finding of probable cause to issue an arrest warrant, and give 'great deference' to such findings."); United States v. Hill, 459 F.3d 966, 970 (9th Cir. 2006); see also United States v. Joseph, 709 F.3d 1082, 1093 (11th Cir. 2013) (citing Illinois v. Gates, 462 U.S. at 236); United States v. Robinson, 724 F.3d 878, 884 (7th Cir. 2013). It would thus be consistent for a court that is reviewing FISA-authorized electronic surveillance and physical searches to adopt the same posture it would when reviewing the probable cause determination of a criminal search warrant issued pursuant to Rule 41 of the Federal Rules of Criminal Procedure. See Ahmed, 2009 U.S. Dist. LEXIS 120007, at *21-22 (according FISC's probable cause determinations the same deference as a magistrate's criminal probable cause determination); cf. United States v. Cavanagh, 807 F.2d 787, 790 (9th Cir. 1987) (concluding that FISA order can be considered a warrant since it is issued by a detached judicial officer and is based on a reasonable showing of probable cause).[21]

## 2. Probable Cause Standard

FISA requires a finding of probable cause that the target is a foreign power or an agent of a foreign power and that each facility or place at which the electronic surveillance is directed is being used, or is about to be used, or that the property or premises to be searched is, or is about to be, owned, used, possessed by, or is in transit to or from, a foreign power or an agent of a foreign power. It is this standard — not the standard applicable to criminal search warrants —

---

[21] Ahmed is not alone in analogizing FISA orders to search warrants. See, e.g., Cavanagh, 807 F.2d 790 (concluding that a FISA order can be considered a warrant since it is issued by a detached judicial officer and is based on a reasonable showing of probable cause); In re Sealed Case, 310 F.3d 717, 774 (declining to decide whether a FISA order constitutes a warrant, but noting "that to the extent a FISA order comes close to meeting Title III, that certainly bears on its reasonableness under the Fourth Amendment"); but see Warsame, 547 F. Supp. 2d at 992 n.10 (noting that the need for foreign intelligence justifies an exception to the warrant requirement).

23

that this Court must apply. See El-Mezain, 664 F.3d at 564 ("[t]his probable cause standard is different from the standard in the typical criminal case because, rather than focusing on probable cause to believe that a person has committed a crime, the FISA standard focuses on the status of the target as a foreign power or an agent of a foreign power"); Abu-Jihaad, 630 F.3d at 130-31; Duka, 671 F.3d at 338; Cavanagh, 807 F.2d. at 790 (citing United States v. United States District Court (Keith), 407 U.S. 297, 322 (1972)). This "different, and arguably lower, probable cause standard . . . reflects the purpose for which FISA search orders are issued." Ahmed, 2009 U.S. Dist. LEXIS 120007, at *22.

### [CLASSIFIED MATERIAL REDACTED]

The probable cause threshold which the Government must satisfy before receiving authorization to conduct electronic surveillance or a physical search under FISA complies with the Fourth Amendment's reasonableness standard. The argument that FISA's different, and arguably lower, probable cause standard violates the Fourth Amendment's reasonableness requirement has been uniformly rejected by federal courts. See, e.g., Abu-Jihaad, 630 F.3d at 120 (listing sixteen cases that have ruled FISA does not violate the Fourth Amendment).

The Supreme Court has stated that "[d]ifferent standards may be compatible with the Fourth Amendment if they are reasonable both in relation to the legitimate need of the Government for intelligence information and the protected rights of our citizens." Keith, 407 U.S. at 322-23 (recognizing that domestic security surveillance "may involve different policy and practical considerations than the surveillance of 'ordinary crime'"). In Keith, the Supreme Court acknowledged that: (1) the "focus of . . . surveillance [in domestic security investigations] may be less precise than that directed against more conventional types of crime"; (2) unlike ordinary criminal investigations, "[t]he gathering of security intelligence is often long range and

involves the interrelation of various sources and types of information"; and (3) the "exact targets of such surveillance may be more difficult to identify" than in surveillance operations of ordinary crimes under Title III. Id. Although Keith was decided before FISA's enactment and addressed purely domestic security surveillance, the rationale underlying Keith applies a fortiori to foreign intelligence surveillance, where the Government's interest, at least from a national security perspective, would typically be more pronounced.

FISA was enacted partly in response to Keith. In constructing FISA's framework, Congress addressed Keith's question of whether departures from traditional Fourth Amendment procedures "are reasonable, both in relation to the legitimate need of Government for intelligence information and the protected rights of our citizens," and "concluded that such departures are reasonable." See S. Rep. No. 95-701, 95th Cong., 2d Sess, at 11. (1978) ("Senate Report"). Similarly, many courts – including the FISC of Review – have relied on Keith in holding that FISA collection conducted pursuant to a FISC order is reasonable under the Fourth Amendment. See In re Sealed Case, 310 F.3d at 738, 746 (finding that while many of FISA's requirements differ from those in Title III, few of those differences have constitutional relevance); Duggan, 743 F.2d at 74 (holding that FISA does not violate the Fourth Amendment); see also Ning Wen, 477 F.3d 896, 898 (7th Cir. 2007) (holding that FISA is constitutional despite using "a definition of 'probable cause' that does not depend on whether a domestic crime has been committed"); Damrah, 412 F.3d at 625 (denying the defendant's claim that FISA's procedures violate the Fourth Amendment); Pelton, 835 F.2d at 1075 (finding FISA's procedures compatible with the Fourth Amendment); Cavanagh 807 F.2d at 790-91 (holding that FISA satisfies the Fourth Amendment requirements of probable cause and particularity); Warsame, 547 F. Supp. 2d at 993-94 (holding that FISA's probable cause and particularity requirements satisfy the